[No. 11032.    Department Two.    July 22, 1913.]

STEWART & HOLMES DRUG COMPANY, *Appellant,* v. J. W. REED, *Respondent,* J. G. Ross, *Defendant.*[1]

SALES—CONDITIONAL SALES—RETAKING PROPERTY—EVIDENCE—SUFFICIENCY. Findings that the vendor of a soda fountain under a conditional sales contract had elected to retake the same and cancel the debt, are sustained where it appears that shortly after the vendee had sold out his business to a third party, the vendor attempted to sell it to such third party, and made arrangements to have it boxed up and shipped back, and delayed for some time making claim upon such third party for its price as a garnishee under the sales-in-bulk act, until the garnishee had paid up the vendee in full.

SAME—RETAKING PROPERTY—ELECTION. An election by the vendor to retake property conditionally sold, finally precludes the assertion

[1]Reported in 133 Pac. 577.

of remedies under the contract; and the election may be invoked by a third person in defense of the assertion of such remedies against him.

FRAUDULENT CONVEYANCES—SALES-IN-BULK—CREDITORS—CONDITION-AL VENDORS—NOTICE. The vendor in a conditional sales contract, who has not elected to retake the property and cancel the debt, is protected as a creditor under the sales-in-bulk act where his vendee makes a sale of goods in bulk without complying with the act, and it is not necessary that he give notice to the fraudulent vendee that he intends to rely upon the statute.

Appeal from a judgment of the superior court for San Juan county, Joiner, J., entered January 8, 1913, dismissing a garnishee defendant, after a trial to the court. Reversed in part.

*Leopold M. Stern (J. W. Russell,* of counsel), for appellant.

*Louis T. Silvain (H. B. Butler,* of counsel), for respondent.

ELLIS, J.—In this action, the plaintiff, by garnishment, sought to enforce against the garnishee defendant Reed an alleged liability under the sales-in-bulk law. About June 17, 1911, the defendant Ross, who was conducting a small mercantile business at Friday Harbor, San Juan county, purchased from the plaintiff upon a conditional sale contract a soda fountain, at an agreed price of $250. Twenty-five dollars was paid on the purchase price at the time, and $25 was remitted from the purchase price by reason of a subsequent failure of the fountain to give satisfactory service, thus leaving a balance of $200 which Ross never paid. Apparently, at the time of the purchase, Ross also purchased from the plaintiff supplies for the fountain of the value of $28.50. This, also, was unpaid.

On the 18th day of July, 1911, the defendant Ross sold his entire stock and a part of his fixtures to the garnishee defendant Reed for $510.79, $50 of which was paid on July 20, 1911, $160.79 on July 28, 1911, and $300 on August 28, 1911. The soda fountain was not included in this sale. It is

admitted that Reed did not obtain from Ross a verified statement of his indebtedness, and the names of his creditors, as required by the sales-in-bulk law, Rem. & Bal. Code, § 5296 et seq. (P. C. 203 § 9). On the 5th day of October, 1911, the plaintiff began an action against the defendant Ross to recover the amount of the unpaid balance of the purchase price of the soda fountain and the account of $28.50 for supplies therefor. A writ of attachment was sued out, and the return of the sheriff on the summons, complaint, and writ of attachment shows that Ross could not be found. The plaintiff filed an affidavit for garnishment, alleging that the garnishee defendant was indebted to Ross and had in his possession and under his control personal property belonging to Ross. A writ of garnishment was issued against Reed, who answered denying any indebtedness to Ross and alleging that he had no property in his possession belonging to Ross. The plaintiff by affidavit controverted this answer. The defendant Ross was served with summons by publication. He failed to answer and an order of default was taken against him. Thereafter, on January 8, 1912, the issues presented in the garnishment proceeding were tried, and the court adjudged that the garnishee defendant, at the time of the service of the writ of garnishment, was not indebted to the defendant Ross in any sum, and then had in his possession no property belonging to Ross, and discharged the garnishee defendant, awarding him costs and disbursements, together with an attorney's fee of $25. The plaintiff has appealed.

Both sides concur in the assertion: "The only question involved is whether or not the court erred in finding that appellant elected to and did rescind the conditional sale contract and retake the property prior to the commencement of the action against the defendant Ross." On this issue the respondent holds the affirmative, the appellant the negative. The evidence in support of the affirmative view may be condensed as follows: Shortly after making the purchase of the stock, the respondent wrote two letters to the appel-

lant, the last apparently written on August 9, 1911. These letters are not in evidence, but the appellant's answer seems to indicate that they advised the appellant of the sale and that the respondent had not purchased the soda fountain. The appellant's answer was as follows:

"J. W. Reed,                    Seattle, Wash., Aug. 10, 1911.
  "Friday Harbor, Wash.
  "Dear Sir: We are in receipt of yours of the 9th inst. and note contents. The fountain was sold to Mr. Ross and will have to be paid for by him. We do not know you in the transaction, and therefore have no desire to continue a lengthy correspondence. If Mr. Ross is good for the fountain, he will have to pay for it.
  "Our Mr. Mayrand will probably be in Friday Harbor within a very short time and we will ask him to go into the matter more fully and take whatever action is necessary.
  "Very truly yours,        Stewart & Holmes Drug Co."

The respondent testified that thereafter, and in the month of August, the exact date did not appear, the man Mayrand, referred to in this·letter, or Marens as he is called in the testimony, did go to Friday harbor and attempted to sell the soda fountain to the respondent. Twice subsequently— the dates do not appear—he visited Friday Harbor and each time tried to sell the fountain to the respondent. This is not contradicted. Marens was not called as a witness. One Woods, another representative of the appellant, testified that, in September, 1911, he went to Friday Harbor and that at that time the respondent had removed the fountain to a back room; and, although he testified that the respondent was using the fountain, the respondent denied this, and Woods' testimony shows that the only use was of the marble counter, and that there was no use being made of the fountain as such. Though Woods was, at that time, told that Ross had gone to California, there is no evidence that he then made any claim that the respondent would be held for the purchase price of the fountain. The evidence also shows that, at some time, the appellant, through its representative, Marens,

made arrangements with one Little to have the fountain boxed up and returned to the appellant at Seattle. Little testified that he was spoken to several times with reference to this matter, the last time being about three months before the trial. We think this evidence justified the finding that the appellant elected to retake the fountain.

The law is well settled that where, as in this state, the title retained by the seller on a conditional sale is an absolute title, on breach of the conditional sale contract by the buyer, the seller has a choice of remedies. He may either disaffirm the contract and retake the chattel, or he may treat the transaction as an absolute sale and sue on the contract for the purchase price. But since these remedies are inconsistent, he cannot do both. The assertion of the one is an abandonment of the other. *Winton Motor Carriage Co. v. Broadway Automobile Co.*, 65 Wash. 650, 118 Pac. 817, 37 L. R. A. (N. S.) 71; *Ramey v. Smith*, 56 Wash. 604, 106 Pac. 160; *Keystone Mfg. Co. v. Cassellius*, 74 Minn. 115, 76 N. W. 1028; *Cooper v. Payne*, 111 App. Div. 785, 97 N. Y. Supp. 863; *White v. Gray's Sons*, 96 App. Div. 154, 89 N. Y. Supp. 481.

Such an election once made is final and irrevocable.

"Upon the breach of a conditional bill of sale, the vendor may either disaffirm the sale and retake the chattel, or ratify the sale and sue upon the contract. These remedies are inconsistent, and where an election is made it is final, and cannot be reconsidered." *Pels & Co. v. Oltarsh Iron Works*, 129 N. Y. Supp. 371, 372.

See, also, *Laclede Power Co. v. Assigned Estate of Ennis Stationery Co.*, 79 Mo. App. 302.

Such an election may be invoked by a third person as a defense to the attempted assertion of the alternative remedy against him. *Frisch v. Wells*, 200 Mass. 429, 86 N. E. 775, 23 L. R. A. (N. S.) 144. The appellant seemingly concedes that this is the law, but relies upon the rule as to election of remedy generally, as stated in 15 Cyc. 260:

"Although acts prior to the actual commencement of legal proceedings indicate an intention to rely upon one remedial right, yet they do not constitute an election which will preclude the subsequent prosecution of an action or suit based upon an inconsistent remedial right, unless the acts contain the elements of estoppel *in pais.*"

It may well be doubted that any element of estoppel is necessary where, as here, the retaking of the chattel sold on conditional sale actually cancels the debt. But assuming, without deciding, that this states the correct doctrine as to election in such a case, we think that the foregoing evidence not only shows an election on the appellant's part to retake the soda fountain with knowledge of the fact that the respondent had purchased the stock of goods, but also that the election was accompanied with the necessary element of estoppel *in pais.* The appellant's letter of August 10th was evidently written with knowledge of the fact that the respondent had purchased the stock of goods. At that time it is certain the respondent had not paid the last $300 of the purchase price of the stock of goods to Ross and was then in position to protect himself. It is fairly deducible, also, from the evidence that the first visit of the appellant's representative, Marens, to Friday Harbor and his first attempt to sell the soda fountain to the respondent was also before the respondent had paid the last $300 on the purchase price of the stock of goods. The letter of August 10th indicated that the appellant's representative would visit the respondent in a very short time and the respondent testified that the first visit took place in August. We think, in view of the fact that the appellant had more than a month after the respondent's purchase of the stock of goods before the respondent had paid the last installment of the purchase price thereon in which to have notified the respondent in case it intended to attempt to hold him for the purchase price of the fountain, and that both by letter and by the attempt to sell him the fountain, the contrary intention was made to appear,

the appellant should now be estopped to claim as against the respondent that it did not elect to retake the fountain. While the letter above quoted indicates an intention to hold Ross for the purchase price, it also fails to indicate any intention to hold the respondent. The subsequent offer to sell him the fountain could only be interpreted by him as an election on the appellant's part to assert its title to the fountain under the conditional sale contract.

We do not want to be understood as holding that, in the absence of an election, the appellant would have been under any obligation to notify the respondent of its intention to assert its rights under the sales-in-bulk law in order to avoid an estoppel. Such a holding would shift the duty imposed by the statute upon the purchaser to the creditor. In the absence of an election, it was not incumbent upon the appellant to notify the respondent of its intention to rely upon the protection accorded by the statute, but having written to the respondent indicating that it relied solely upon the defendant Ross for payment, and afterwards having attempted to sell the fountain to the respondent, the facts showing estoppel become important, not primarily as an estoppel to rely upon the statute, but as an estoppel to deny the election.

It has been suggested that, in a case such as this, the election by the vendor under the conditional sale to treat the sale as absolute so as to create an existing debt should be made before the sale of the goods in bulk in order to hold the vendee of the goods under the sales-in-bulk law. This is on the theory that, until such election, the vendor under the conditional sale contract is not a creditor in the full sense of the term, and that the purchaser of the goods in bulk without taking the affidavit takes subject only to then existing debts. The statute, however, in its effect as declaring transfers fraudulent in law when the affidavit is not taken, is analogous in principle to the statute (Rem. & Bal. Code, § 8766; P. C. 95 § 47), relative to voluntary conveyances between

husband and wife. We have held the latter statute applicable to protect a creditor whose claim was immature and contingent. *Sallaske v. Fletcher*, 73 Wash. 593, 132 Pac. 648. In the absence of any prior election, the same rule should apply to creditors claiming protection under the sales-in-bulk law. It is obvious, however, that if an election to retake the chattel is made, whether before or after the sale of the goods in bulk, it cancels the debt and is a complete defense to the proceeding under the sales-in-bulk law to collect the price of the chattel.

The foregoing has no application to the item of $28.50. That debt was never canceled. The failure to give judgment for that claim was error.

The judgment is reversed, with direction to enter judgment in favor of the appellant and against the respondent for $28.50 with interest at the legal rate from June 17, 1911.

Neither party will recover costs.

MAIN and MORRIS, JJ., concur.

FULLERTON, J., concurs in the result.