[No. 17706.    Department One.    April 5, 1923.]

E. M. SKOUG, *Respondent*, v. HARTFORD ACCIDENT & INDEMNITY COMPANY, *Appellant*.[1]

INSURANCE (121)—SALES (119)—CONDITIONAL SALES—REMEDIES OF SELLER—WAIVER OR LOSS OF RIGHT—THEFT—INSURANCE—LIABILITY. A conditional sales contract of an automobile was terminated, and the liability thereby ended on a policy insuring the vendor against disposal or concealment by the vendee, where plaintiff purchased the vendor's interest, took an assignment of the policy, and took possession of the car on the vendee's default, but, in consideration of an additional sum, agreed to redeliver the car to the vendee, who thereafter stole the car from the plaintiff's garage.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered June 3, 1922, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

*Randall & Danskin*, for appellant.
*Powell & Herman*, for respondent.

MACKINTOSH, J.—The respondent loaned to one Schmidt $200 to be used in purchasing an automobile by Schmidt under a conditional sale contract, on

[1]Reported in 214 Pac. 155.

which there remained due more than $600. Schmidt's purchase was from the Spokane Auto Market, and a policy of insurance was taken out by that concern to protect against fire and theft, and attached to that policy was what is called a conditional sale contract clause, upon which this action is based.

We are not interested in the fire and theft policy and only mention it as showing the manner in which the policy issued by the appellant came into existence.

Thereafter the conditional sale contract and the insurance passed to R. J. Martin & Company, and the respondent, on May 31, 1921, learning that Schmidt was behind in his payments on the contract, for the purpose of protecting the $200 which he had loaned and for which he had no security, purchased from R. J. Martin & Company the conditional sale contract, paying the full amount then remaining due, and received the proper assignments of the insurance policy.

The conditional sale contract clause, so far as it is material here, is as follows:

"It is agreed and understood that the automobile described in the policy to which this certificate is attached has been sold by said Spokane Auto Market, vendor, to Albert Schmidt, vendee, under Conditional Sale Contract, or subject to a chattel mortgage under which the unpaid balance is $612, a copy of which shall be furnished to this company by the said vendor on demand. In consideration of  .  .  . this company, subject to all terms and conditions of said policy (in so far as same do not conflict with the specific undertaking and conditions of this certificate) also insures the said vendor against all direct loss or damage which he may sustain caused by the disposal or concealment of said automobile by the said vendee, with intent to defraud the said vendor, not exceeding the amount named in said policy nor the actual cash value of the said automobile at the time of such disposal or concealment, nor exceeding two-thirds of the contract pur-

chase price thereof, and in no event to exceed the amount of the unpaid portion of the purchase price of said automobile, exclusive of any interest thereon after default.''

In June, 1921, Schmidt, being in default on his contract, the respondent took possession of the car, without legal process and without Schmidt's permission. After Schmidt discovered that the respondent had taken the car into his possession, in a conversation between the two men, the respondent agreed that Schmidt might have until the first day of July to raise the necessary money to pay the $200 and the balance due upon the conditional sale contract. The respondent placed the car in his own garage and used it, although he allowed Schmidt to use it on certain occasions up to the 20th of June. The respondent had repairs made on the car, for which he paid; kept the key to the car and so arranged its mechanism that no one could take it without his permission. He secured new license plates which he placed on the car, Schmidt having removed his plates, and made application to the public service commission for permission to use the car as a stage. Things ran along in this condition until the morning of the 3d of July, when Schmidt went to the garage of the respondent and stole the car, since which time neither he nor the car has been seen. Action was then brought upon the policy, and upon these facts the case went to the jury, which returned a verdict for the balance due upon the conditional sale contract, and from a judgment based thereon, this appeal has been taken.

It is appellant's contention that its motion for nonsuit should have been granted for the reason that the conditional sale contract clause (which we will hereafter call the policy) became of no effect when the respondent repossessed himself of the automobile from Schmidt, it being argued that the act of repossession

terminated the relationship of vendor and vendee under the conditional sale contract.

This court has held that, where the vendor in a conditional sale contract chooses between the rights which he has to retake the property or to receive the unpaid balance of the purchase price, his election is final. *Stewart & Holmes Drug Co. v. Reed,* 74 Wash. 401, 133 Pac. 577; *Jordan v. Peek,* 103 Wash. 94, 173 Pac. 726. The election to take the car was evidenced by the respondent's seizure of it; possession of it in his own garage; the exercise of exclusive control over it; his repair of it; the substitution of his own for Schmidt's license plates; his application for the use of the car as a stage, and his attempted sale thereof. That the conditional sale contract was terminated is further evidenced by the fact that respondent and Schmidt entered into an entirely new arrangement whereby Schmidt was to pay in addition the sum of $200, which he was owing to the respondent, and a new time for performance was set—to-wit, the first of July. The subsequent theft of the car by Schmidt took place after the expiration of this new contract; and even if the new contract could be said, in any way, to be merely a modification of the original contract so that the relationship of conditional vendor and conditional vendee thereon existed as provided for in the original contract, still that relationship had ceased at the time of the theft by Schmidt. The policy only insures the equity of the conditional vendor so long as the contract is in existence. It was, in other words, not a theft policy. This being true, the trial court was in error in submitting these facts to the jury.

The judgment is reversed and the action dismissed.

MAIN, C. J., BRIDGES, HOLCOMB, and MITCHELL, JJ., concur.