[No. 17787.   Department Two.   November 28, 1923.]

AUGUST BLENZ, *Appellant,* v. FRANK FOGLE,
*Respondent.*[1]

PAYMENT (6)—BY NOTES. The giving of a negotiable promissory
note for a pre-existing debt, owing by the payor to the payee, does
not discharge the pre-existing debt or create a new independent debt,
in the absence of an agreement to that effect.

VENDOR AND PURCHASER (53)—RESCISSION BY VENDOR—ELECTION—
FORFEITURE BARRING RECOVERY OF PURCHASE MONEY. A vendor after
claim of forfeiture and retaking possession with the acquiescence
of the vendee, cannot hold the vendee upon his promissory note
given for part of the purchase price; and a note given by the
vendee, before notice of the forfeiture, as further evidence of part
of the unpaid purchase price, cannot be considered and enforced as
a payment of the pre-existing debt, in the absence of any agreement
to that effect.

Appeal from a judgment of the superior court for
Stevens county, Brinker, J., entered November 6, 1922,
in favor of the defendant, dismissing an action on con-
tract, after a trial on the merits to the court. Affirmed.

*L. B. Donley* and *Chas. F. Cowan,* for appellant.
*John H. Bowers* and *W. H. Jackson,* for respondent.

PARKER, J.—The plaintiff, Blenz, commenced this ac-
tion in the superior court for Stevens county, seeking
recovery of a judgment against the defendant, Fogle,
for an alleged balance of $5,450 and interest, due upon
a $6,000 promissory note, executed and delivered by
Fogle to him, and also seeking foreclosure of two chat-
tel mortgages purporting to secure the same, executed
and delivered by Fogle to him upon farm implements,
live stock, and crops situated in that county. The prin-
cipal defense made in behalf of Fogle is that the con-
sideration for the note in question has failed, in so far

[1]Reported in 220 Pac. 790.

as the note remains unpaid, because it was executed to evidence a part of the unpaid purchase price of an executory contract for the sale of land, which contract, Blenz asserts, has been terminated and the rights of Fogle thereunder forfeited. A trial in the superior court resulted in a judgment denying to Blenz the relief prayed for, and a dismissal of the action accordingly, from which he has appealed to this court. We shall refer to the parties to this cause and the contracts, note and mortgages in question as Blenz and Fogle, omitting reference to their wives for convenience of expression, though their wives, at least so far as their respective community obligations and interests are concerned, are parties to this action and will be, to that extent, equally affected by its final disposition.

A contract looking to the consummation of a sale of several hundred acres of land, and certain personal property situated thereon, by Blenz to Fogle, was entered into between them as follows:

"THIS CONTRACT, made and entered into this 27th day of July, 1920, by and between August Blenz and Cora Blenz, husband and wife, of Colville, Stevens county, Washington, the parties of the first part, and Frank Fogle of Forman, N. Dak., the party of the second part, WITNESSETH, as follows, to wit:

"The parties of the first part, for their heirs, executors and administrators, agree to sell to the party of the second part all those certain pieces or parcels of land situate in the county of Stevens, state of Washington, known and described, as follows, to wit: [Here follows description of the land.]

"The party of the second part, for his heirs, executors, administrators and assigns, agrees to buy of the parties of the first part said above described premises, and to pay the parties of the first part for the same the sum of thirty seven thousand ($37,000) dollars at the times and in the manner following, to wit:

"One thousand ($1,000) dollars upon the execution of this contract, and the remainder of thirty six thousand ($36,000) dollars to be paid in two payments, as follows, to wit:

"Nine thousand ($9,000) dollars on or before October 1st, 1920, and twenty seven thousand ($27,000) dollars on or before October 1st, 1925, with interest on said $27,000 from and after October 1st, 1920, at the rate of 6% per annum until due, and thereafter on the whole sum remaining due or unpaid in each year interest at 12% per annum until paid; interest all payable annually.

"And the party of the second part shall also pay and discharge all taxes and assessments imposed on said premises from and after the date hereof, whether ordinary, extraordinary, or for revenue purposes, when the same shall become due and payable, including all taxes for the year 1920 and all taxes thereafter.

"It is hereby agreed by and between the parties hereto that this contract together with warranty deed made and executed by said first parties conveying said premises to second party and with bill of sale to machinery, implements, stock and crops on said premises and belonging to said first parties, conveying same to second party shall be placed in escrow with The Bank of Colville, Wash., to be delivered by said bank to said second party upon the payment of the $9,000 to become due on or before Oct. 1, 1920, and upon the execution and delivery by said second party of note and mortgage in the sum of $27,000 secured upon above described premises made in favor of said first parties. Abstracts showing good merchantable title to be furnished by first parties.

"And it is hereby especially agreed by and between the parties hereto that second party shall have possession of said premises, stock, crops, machinery, implements, etc., upon the payment of the $9,000 to become due on or before Oct. 1st, 1920. First parties to remain on said premises until such time and to be paid by second party for the harvesting of said crops, caring for and looking after said land, crops, stock, etc.

Settlement for same to be made at the time of taking possession by second party.

"It is expressly agreed that time is the essence of this contract, and in case of default by the party of the second part, his heirs or assigns in any of the conditions above stipulated to be performed by him, then and in that case this contract shall become void and the party of the second part shall have forfeited all his rights hereunder and any and all payments that shall have been made shall become forfeited to the parties of the first part, which said payments it is hereby especially agreed in that event shall be deemed as damages hereby liquidated for the nonperformance of this contract by said second party."

We note that this contract does not, in terms, convey any personal property, nor does the record before us affirmatively show any conveyance of any personal property, though it seems to be assumed that conveyance of personal property was eventually made as contemplated by the terms of the contract. We also note that $37,000 is the stated total consideration for the sale of the land. What the consideration was for the personal property contemplated to be transferred at the same time is a matter not made certain. However, we think, as we proceed, that will appear to be of no moment in our present inquiry. The thousand dollar cash payment specified in the contract, we assume, as counsel do, was paid upon the execution of the contract. Thereafter the contract was modified by the parties extending the due dates of the payments of the purchase price as follows:

"This Agreement, Made and entered into this 5th day of August, 1920, by and between August Blenz and Cora Blenz of Colville, Wash., parties of the first part, and Frank Fogle of Forman, N. Dak., party of the second part, WITNESSETH as follows, to wit:

"That the payments to become due under that certain Land Contract of date of July 27, 1920, made and executed by and between the parties hereto, are hereby extended to and made to become due on or before Nov. 1st, as follows, to wit:

"The $1000 to be paid upon execution of said land contract; $9000 on or before November 1st, 1920, and $27,000 on or before November 1st, 1925, with interest thereon at the rate of 6% per annum from and after Nov. 1st, 1920. Interest all payable annually.

"Second party to have possession of premises, crops, stock and implements upon the payment of the $9000 to become due on or before Nov. 1st, 1920, instead of October 1st, 1920, as stated in said land contract.

"All other conditions of said land contract, excepting as mentioned in this agreement to remain the same as set forth in said contract.

"It is hereby especially agreed by and between the parties to said contract and to this further agreement that this agreement shall be attached to and become a part of said land contract."

This, we note, continues in full force all portions of the original contract not specifically so modified, meaning, of course, that its forfeiture provisions are continued in full force and effect. On November 1, 1920, Fogle, at the request of Blenz, executed and delivered to a third person a promissory note for $1,000. Fogle also then executed and delivered to Blenz two promissory notes for $1,000 each, and one for $6,000; all of these notes further evidencing the $9,000 due upon the contract on that day. At the same time, Blenz executed a deed conveying the land to Fogle and Fogle executed a promissory note payable to Blenz for $27,000, due November 1, 1925, and also a mortgage upon the land securing the same. This deed, the $27,000 note and the mortgage were then deposited in escrow with the Bank of Colville as contemplated by the contract, such escrow being evidenced by an agreement executed by Blenz and Fogle reading as follows:

"November 1st, 1920.

Bank of Colville, Colville, Wash.

"The within enclosed deed made and executed by August Blenz and Cora Blenz, conveying certain properties described therein to Frank Fogle, and also the within enclosed Mortgage in the sum of $27,000 made and executed by Frank Fogle and Annie Fogle in favor of August Blenz, said deed and mortgage to be placed in escrow with said Bank to be held and delivered to the Grantees named therein on the following conditions:

"Said Deed to be delivered to Frank Fogle as soon as the mortgage in the sum of $1700 now on and against said land shall have been paid and properly released.

"It being understood that the said Frank and Annie Fogle have on this date made and executed one certain chattel mortgage in the sum of $6000 and it being agreed and understood that the first money paid on said Chattel Mortgage shall apply on the payment of said $1700 mortgage now against said lands.

"Said $27,000 mortgage to be delivered to August Blenz at the time of delivery of said Deed to Frank Fogle."

We are not advised by the record that any papers, other than this deed, the $27,000 note, and the mortgage securing the same, were ever placed in escrow by the parties, though the record does suggest that the parties originally contemplated other papers being placed in escrow. So we shall assume as we proceed that no other papers having to do with the sale of the land or personal property were ever placed in escrow. On the same day, Fogle, to secure the $6,000 note, executed and delivered to Blenz a chattel mortgage upon personal property, some of which seems to have been personal property transferred by Blenz to Fogle at the time of contracting for the sale of the land, and some of which seems to have been other property then belonging to Fogle. Blenz apparently soon thereafter

surrendered possession of the land to Fogle and wife, and, we assume, also surrendered whatever personal property was contemplated by the contract should be then transferred by Blenz to Fogle.

On June 30, 1922, Fogle executed and delivered to Blenz, as additional security for the $6,000 note, a chattel mortgage upon the crops growing upon the land during the season of 1922. On May 22, 1922, Blenz, evidently deeming Fogle's rights under the original contract as being subject to forfeiture, because of his failure to make payments as therein provided—that is, his failure to pay taxes upon the land and failure to pay the installments evidenced by the three $1,000 and one $6,000 notes—elected to declare Fogle's rights under the contract forfeited, and took up from the bank the papers which had been deposited in escrow. This is evidenced by an indorsement signed by Blenz upon the escrow agreement in the form of a receipt to the bank for the papers, in these words: "Received above papers. Contract having been forfeited." We note that this occurred before the execution of the second chattel mortgage further securing the $6,000 note, but we think the record warrants the conclusion that, when Fogle executed that mortgage, he was not advised of Blenz's claim of forfeiture and taking up the escrow papers from the bank.

On July 22, 1922, this action was commenced by Blenz seeking recovery upon the $6,000 note and the foreclosure of the two mortgages. This, it will be noticed, occurred two months after Blenz had taken up from the bank the escrow papers and claimed forfeiture of Fogle's rights under the contract. On July 29, 1922, seven days after the commencement of this action, Blenz commenced, in the superior court for Stevens county, another action against Fogle seeking a formal adjudication of the forfeiture of Fogle's

rights under the contract. In his complaint in that action, he alleged, among other things:

"That defendants have violated the terms of said contract in that they failed to pay taxes and assessments on said property and have failed to make any payments whatever on said contract save and except the sum of $575 on the chattel mortgage and note mentioned in said contract."

Some effort is made by oral testimony of Blenz to show that the giving of the $6,000 and other notes was understood by the parties to be in full payment of the $9,000 then due upon the contract price, so that thereafter Blenz would have the right of recovery upon the notes wholly unimpaired by anything which might impair the debt viewed as a part of the original consideration for the land. This testimony we think, however, amounts to nothing more in substance than the opinion of Blenz that "I received those notes the same as cash," he being unable to remember any definite conversation with Fogle evidencing an agreement between them that the notes were given and received in absolute payment of the $9,000 then due. Fogle testified that nothing was said upon that subject.

Our real problem is this, is the obligation evidenced by the $6,000 note, in legal effect, still the same obligation as that amount of the agreed sale price of the original land contract? If it is, then we have here a case where the vendor is claiming forfeiture of the rights of his vendee in the property and in payments made on the agreed sale price, and at the same time seeking to recover a portion of the sale price remaining unpaid. This, of course, a vendor cannot do. In other words, he cannot reclaim the property under a forfeiture clause in the sale contract, such as is here drawn in question, and at the same time recover any portion of the unpaid sale price. This view of the law

is too elementary to call for extended citation of authorities to lend it support.  27 R. C. L. 666.

It seems to be the settled law of this state, in harmony with the views expressed by other courts of this country, that the giving of a negotiable promissory note for a preexisting debt owing by the payor to the payee does not discharge the preexisting debt and create a new debt independent thereof, as between the original parties, in the absence of an agreement between them to that effect, and that the burden of showing such an agreement rests upon the one asserting it. *Walsh v. Cooper,* 10 Wash. 513, 39 Pac. 127; *Moon Bros. Carriage Co. v. Devenish,* 42 Wash. 415, 85 Pac. 17, 7 Ann. Cas. 649; *Carlson Bros. Co. v. Weidauer & Lansdown Shingle Co.,* 69 Wash. 161, 124 Pac. 397; *Globe Express Co. v. Taylor,* 61 Colo. 430, 158 Pac. 717; *Cranston v. West Coast Life Ins. Co.,* 63 Ore. 427, 128 Pac. 427; *Way v. Mooers,* 135 Minn. 339, 160 N. W. 1014; *Leschen & Sons Rope Co. v. Mayflower Gold Min. & Reduction Co.,* 173 Fed. 855, 35 L. R. A. (N. S.) 1.

In the last cited case, Judge Sanborn, speaking for the court, said:

"A clear agreement by the creditor that he will take the risk of the payment of the note, and that the debt is discharged thereby, or the indubitable intention so to do, is requisite to extinguish a debt by the taking of the debtor's note."

Even an unpaid judgment rendered upon an installment of the purchase price of such a contract, is held to be satisfied by an election of forfeiture by the vendor, because of subsequent defaults, in *Warren v. Ward,* 91 Minn. 254, 97 N. W. 886.

Now, as we view this somewhat involved record, it seems plain to us that Blenz is asserting the right of forfeiture of Fogle's rights under the land sale contract; that Fogle acquiesces in such claim in so far as

his right to the property is concerned; that Blenz asserted such right of forfeiture before he commenced this action seeking recovery on the $6,000 note; that the $6,000 note was given to further evidence that much of the $37,000 expressly specified in the land sale contract as the consideration for the contemplated consummation of the sale of *the land* from Blenz to Fogle; and that the facts of the case above summarized do not warrant the conclusion that the $6,000 note was given or accepted in complete satisfaction of that much of the specified purchase price; but that the note, as between these parties, was given only as additional evidence of that much of the consideration remaining unpaid at the time it was given. In other words, Blenz is, by this action, in effect but seeking recovery of that much of the unpaid purchase price of the original contract, after he has claimed forfeiture of Fogle's rights thereunder, and Fogle's acquiescence therein in so far as his right to the property under the contract of sale is concerned.

We are of the opinion that the judgment of the trial court denying to Blenz recovery must be affirmed. It is so ordered.

MAIN, C. J., FULLERTON, and TOLMAN, JJ., concur.