[No. 18709.   Department One.   January 9, 1925.]

LEO F. SAINSBURY et al., Respondents, v. WAPATO FRUIT & COLD STORAGE COMPANY, Appellant.[1]

STIPULATIONS (2)—CONSTRUCTION AND OPERATION. A stipulation dictated in open court by the attorney for one of the parties, and acquiesced in by opposing counsel, that a certain note offered in evidence was one of the notes secured by the mortgage in suit, is conclusive.

PAYMENT (13)—APPLICATION—BY CREDITOR. Where a chattel mortgagee of two-thirds of an apple crop was also entitled to receive one-third of the proceeds of the crop under a sales agreement, and he gave notice of his rights to a purchaser of the crop, who nevertheless paid all the purchase price to the mortgagor, payments made by the mortgagor may be applied by the mortgagee to the indebtedness for his one-third of the crop, before applying anything on the mortgage indebtedness; since both sums were directly connected with the sale and he had a right to collect both sums and the purchaser was in a position to have protected itself.

TROVER AND CONVERSION (3)—ACTS CONSTITUTING—APPROPRIATION OF PROCEEDS OF SALE OF ANOTHER'S PROPERTY. The purchaser of an apple crop, subject to a one-third interest of a third person who also held a chattel mortgage upon the seller's two-thirds interest, is guilty of a conversion in paying the proceeds to the mortgagor, after notice of the right of the mortgagee to receive one-third of the proceeds and the mortgage indebtedness.

PAYMENT (6)—BY BILL OR NOTES—AGREEMENT OF PARTIES. Where a contract for the sale of an orchard provided that one thousand dollars should be paid on November 1, 1920, and a note was subsequently given for the amount and secured by a chattel mortgage on the next year's crop, the note was not a "payment" on the contract, in the absence of any express agreement to that effect.

[1] Reported in 232 Pac. 331.

VENDOR AND PURCHASER (53)—RESCISSION BY VENDOR—ELECTION—
FORFEITURE BARRING RECOVERY OF PURCHASE MONEY.  Where a con-
tract for the sale of an orchard was rescinded for default, a note
given for a delinquent installment, and secured on the next year's
crop, not expressly agreed to be in payment discharging the debt,
cannot be enforced against the vendee or against the crop in the
hands of a purchaser subject to the mortgage, which was cancelled
by the rescission of the sale.

APPEAL (162)—NECESSITY OF FINDINGS—SPECIAL FINDING.  The
failure of the court to make a special finding on a point in issue
upon which evidence was introduced, does not preclude the court
from considering the evidence, where error was assigned thereon.

Appeal from a judgment of the superior court for
Yakima county, Nichoson, J., entered December 27,
1923, upon findings in favor of the plaintiffs, in an ac-
tion for conversion, tried to the court.  Reversed.

*Holden, Shumate & Cheney,* for appellant.

*Richards, Gilbert & Fontaine,* for respondents.

BRIDGES, J.—Action for damages growing out of an
alleged conversion of certain fruit, and involving the
application of certain payments of money.

By written agreement, executed in April, 1920, the
plaintiffs agreed to sell to Crane and wife, who agreed
to purchase, a certain fruit orchard, for a designated
consideration, part of which was to be paid down in
cash, and the balance was to be paid in annual install-
ments equal to one-third of the gross crop returns each
year from such lands; such payments, however, to be
not less than one thousand dollars per year.  The an-
nual payment for 1920 was not made because of crop
failure; but, in the following April, Crane and wife
gave to the plaintiffs their note for the minimum re-
quired, together with interest, amounting to $1,416.64.
At the same time they gave their note for one hundred
and twenty dollars, representing borrowed money.

These two notes were secured by a chattel mortgage,

running from Crane to the plaintiffs and covering the 1921 crop of fruit. This mortgage was in all respects regular and was filed as required by law. It also contained a provision to the effect that it should be security for any advancements thereafter made to Crane and wife, for taking care of or harvesting the crop. This clause of the mortgage secured a further indebtedness of five hundred dollars as an advancement, as we will later show in detail.

We have, then, this situation: first, that the Cranes are to pay the plaintiffs one-third of the gross returns of the crop for 1921; and, second, the plaintiffs have a mortgage on Crane's interest in the 1921 crop to secure the sums above mentioned. This being the situation, when the 1921 crop was ready to be harvested, Crane sold it to the defendant for something over $4,700. The evidence is in direct conflict as to whether the plaintiffs consented to this sale. The trial court found that they did not, and that it was made without their authority. We cannot say that the testimony so preponderates the other way that we should refuse to follow the court's findings. We shall assume, therefore, for the purpose of this case, that the plaintiffs, as mortgagees, did not consent to the sale to the defendants.

The trial court found, and we think correctly, that, after the plaintiffs learned that the sale had been made and before any considerable amount of payments had been made by the defendant, they notified the defendant of their right to receive one-third of the gross returns and the amount secured by their chattel mortgage. Notwithstanding the information thus received, the defendant paid all of the purchase price to Crane. The latter paid the plaintiffs, out of the moneys received by him from the defendant, a sum sufficient to pay one-third of the gross returns, which, under the contract,

was to be paid to the plaintiffs, and a small sum in addition thereto. The plaintiffs applied these payments to the discharge of the one-third of the gross returns they were entitled to receive, applying the balance (which was only a small sum) towards the indebtedness secured by the mortgage. If these payments had been applied to the discharge of the mortgage indebtedness, that debt would have been fully paid. We think it clearly appears that Crane knew that the plaintiffs were making the application of payments in the manner indicated above, and consented thereto; and we are also convinced that the plaintiffs, when they received the payments from Crane, knew that the money came from the defendant, being a part of the purchase price of the fruit.

The complaint charges the defendant with a conversion of the fruit to their damages in the amount still due under the mortgage and asks for judgment therefor. The trial court found there has been a conversion and that there was still owing to the plaintiffs, on account of the mortgage debt, $2,177.01 and gave judgment for that amount.

(1) It is first contended that the note representing the five hundred dollars was not secured by the mortgage, because it was not advanced after the execution of that instrument. Although we are strongly inclined to the view that this sum was an advancement under the mortgage, yet, because of things occurring at the trial, we need not discuss that question. When this five hundred dollar note was offered in evidence, the attorney representing the appellant said: "We might admit the others, too. Let me see them. No objection to either of them." Thereupon the attorney for the respondents stated to the court, and dictated into the record, the following:

"It is agreed for the purpose of the record that plaintiff's identification C [being the five hundred dollar note] may be introduced in evidence as one of the notes secured by the mortgage, being the note representing advances made under the mortgage—note for five hundred dollars."

While the record does not affirmatively show that the attorneys for the appellant admitted the correctness of this so-called stipulation, neither is there anything to show that they objected to it. Unquestionably the respondents' attorneys understood that the appellant was agreeing that this five hundred dollar note was secured by the mortgage. If the latter had any contrary idea, it was, under the circumstances, bound to so state. It is probable that its failure so to do induced the respondents to rely on the stipulation and not produce further testimony on the matter.

(2) A more troublesome question is with reference to the application of payments. The appellant contends that the moneys paid by it to Crane, and by the latter to the respondents, should have been applied on the mortgage indebtedness and thus have fully paid it. It admits that the general rule is that a creditor may apply payments as he sees fit, in the absence of directions from the debtor as to how the application shall be made; but contends that it comes within a generally recognized exception to that rule, which is, that money which is derived from a particular source must be applied to the relief of that source; or, as stated in 30 Cyc. 1237:

"Another exception to the rule that the creditor has the right to apply the payment obtains when the money with which the payment is made is known to the creditor to have been derived from a particular source or fund, in which case he cannot, without the consent of the debtor, apply it otherwise than to the exoneration of the source or fund from which it was derived."

The argument is that, since the respondents knew that the money they received from Crane came from appellant, and was a part of the purchase price of the fruit, they were bound to apply the payments towards that indebtedness which the appellant was obligated to see paid, that is, the mortgage indebtedness. In support of this view, the following cases are cited from this court: *Cummings v. Erickson,* 116 Wash. 347, 199 Pac. 736; *Sturtevant Co. v. Fidelity & Deposit Co.,* 92 Wash. 52, 158 Pac. 740, L. R. A. 1917C 630; *Hughes & Co. v. Flint,* 61 Wash. 460, 112 Pac. 633; *Crane Co. v. Pacific Heat & Power Co.,* 36 Wash. 95, 78 Pac. 460; *Bowles Co. v. Clark,* 59 Wash. 336, 109 Pac. 812, 31 L. R. A. (N. S.) 613.

On the other hand, the respondents' position is that the exception to the rule contended for by the appellant is not applicable to the facts here, because they were, in any event, entitled to receive from Crane the one-third of the gross returns, and for that reason they had a right to apply the moneys received to the discharge of that indebtedness. We are of the view that the exception to the general rule with reference to the application of payments does not apply to the peculiar facts involved here, and that the cases cited are not controlling.

In the case of *Crane Co. v. Pacific Heat & Power Co., supra,* a surety guaranteed the faithful performance by the contractor for the construction of a school building. A materialman furnished the contractor with materials for the building. Later, the contractor paid the materialman a part of the amount due him, which the latter applied to an old and disconnected claim. It later filed its lien for the material furnished, and the surety company defended on the ground that the payment which had been made should have been applied towards the material bill for the building in question.

It was shown that the materialman knew that the payment he had received came from the school district. We held that, under these circumstances, the materialman should have applied the payment to the material furnished, saying:

"We think, under both authority and right reasoning, that the indemnity company had an equitable right to have the money which was paid the respondent by its principals on the bond applied to the liquidation of the debt for which the security was given."

In *Cummings v. Erickson, supra,* we held that, where a creditor had allowed part of the property on which he had a mortgage to be sold and the proceeds were placed in his hands in extinguishment of the debt, or to apply on the debtor's account, in the absence of an understanding to the contrary, the presumption must be that the proceeds will be applied to the secured debt.

We will not particularly mention the other cases cited, because those reviewed are more nearly in point than the others. If the respondent here had held a claim against the Cranes other than the mortgage, which had no connection with the fruit in question, then this case would probably be parallel with the cases reviewed. But it must be remembered that the respondent was entitled to receive one-third of the gross returns from this fruit and, by the terms of the contract, Crane had a right to collect that sum; and having collected it, it became his duty to turn it over to the respondents. It will thus be seen that the indebtedness to which the respondents applied the payments was directly connected with the sale of this fruit. These facts clearly distinguish this case from those cited.

Appellant was, at all times, in position to protect itself. It had the purchase price in its hands; it knew that not only were respondents entitled to one-third

of the purchase price, but also an amount sufficient to pay the mortgage debt. Under these circumstances it would be inequitable to force the respondents to apply the payments on the mortgage indebtedness.

The matter may be looked at, also, from another viewpoint: the appellant wrongfully converted the property covered by the mortgage. By that act, it at least legally refused to recognize respondents' mortgage lien, and in so doing it might be said that it cannot now claim that it is entitled to be protected on a claim which in legal effect it refused to recognize. We are of the opinion that the respondents had a right to apply the payments in the manner they did.

(3) Appellant contends that the respondents did not have any ownership of the fruit sold to it. We do not find it necessary to decide this question. What we have heretofore said is on the theory that the respondents had nothing other than a chattel mortgage lien, and the right to receive one-third of the gross proceeds of the sale.

(4) Another important feature of the case remains to be discussed. The testimony shows that, after the occurrence of all of the events before mentioned, but before the commencement of this suit, there was a rescission, apparently by mutual consent, of the original contract of sale of the orchard lands; and, in carrying out that agreement, Crane and wife deeded all their interest in the property to the respondents. The purpose and effect of this deed was to annul the contract between the parties. Appellant contends that the annulment of that contract had the effect of cancelling the $1,416.64 note which was secured by the chattel mortgage, because it represented a part of the purchase price of the land. One paragraph of the contract is as follows:

"Time is of the essence of this contract, and in case of failure of the parties of the second part to make either of the payments or to perform any of the covenants on their part, this contract shall be forfeited and determined at the election of the said parties of the first part; and the said parties of the second part shall forfeit all payments made by them on this contract and such payments shall be retained by the said parties of the first part in full satisfaction and liquidation of all damages by them sustained; and they shall have the right to re-enter and take possession of said lands and premises and every part thereof."

Nearly all of the courts, including this one, have held that, where there is a default of the purchaser under an executory contract, the vendor may annul the contract and re-take the property and thereby forfeit the rights of the vendee, including any payments which he may theretofore have made; and if he so does, he may not thereafter enforce any provisions of the contract or any payment agreed to be made thereunder.

In *Blenz v. Fogle,* 127 Wash. 224, 200 Pac. 790, we held that a vendor, after claim of forfeiture and taking possession of the property under an executory contract of sale, cannot hold the vendee on his promissory note, given for part of the purchase price. In other words, the vendor may not declare the contract annulled and recover the property, and at the same time enforce payment of the purchase price under the contract. It has also been held that, where the vendor has recovered a judgment against the vendee for a part of the purchase price, and thereafter annulled the contract and retakes the property, he may not enforce the judgment. *Warren v. Ward,* 91 Minn. 254, 97 N. E. 886; *Ward v. Warren,* 44 Ore. 102, 74 Pac. 482. It has also been held that the fact that the purchase money notes have been secured by a mortgage upon other property does not alter the situation, and a declaration of forfeiture will

destroy the right of the holder of the notes to enforce them. *Steiner v. Baker,* 111 Ala. 374, 19 South. 976.

The real question, then, is whether this $1,416.64 note was in part payment of the purchase price, or merely an evidence thereof. It is our view that it was not given in payment. The contract provides that at least one thousand dollars should be paid on November 1, 1920. This was not paid, and the note which was subsequently given was nothing more than an evidence of that indebtedness. The fact that it was secured by a mortgage cannot alter the situation nor the character of the note. When given, it represented a part of the purchase price, and it still does. Suppose that A and B enter into an executory contract whereby the former agrees to sell, and the latter to purchase, certain property for one thousand dollars, to be paid in one year, meanwhile the possession to be in the purchaser and the title to remain in the vendor. Suppose that, at the end of that year, the payment is not made and the purchaser gives his note therefor, due in six months. If the note is to be considered as payment of the purchase price, then the contract is complied with and B becomes the absolute owner of the property. Certainly, the courts would not sanction this result unless there was an express agreement to that effect, when the note was given. So here, suppose that instead of giving a note for a part of the purchase price, Crane had given a note for all of it; could it be successfully contended that the purchase price had been paid. and that Crane had become the owner of the land? We think not. The almost universal rule is that a promissory note, given for a precedent debt, does not extinguish the debt unless such was the express agreement. It is so held in *Leschen & Sons Rope Co., v. Mayflower Gold Mining & Reduction Co.,* 173 Fed. 855, 35 L. R. A.

(N. S.) 1.  There is an elaborate note in the last cited volume, covering this question.

In *Blenz v. Fogle, supra,* we said:

"It seems to be the settled law of this state, in harmony with the views expressed by other courts of this country, that the giving of a negotiable promissory note for a preexisting debt owing by the payor to the payee does not discharge the preexisting debt and create a new debt independent thereof, as between the original parties, in the absence of an agreement between them to that effect, and that the burden of showing such an agreement rests upon the one asserting it."

Manifestly, the respondents would not be permitted, after they had forfeited the contract, to sue Crane on this note and get judgment; and if it cannot be the basis of a judgment against the maker, it cannot against the appellant.  A careful reading of the somewhat complicated facts in *Blenz v. Fogle, supra,* will show that that case is decisive of this.

The trial court did not make any findings of fact on this feature of the case, nor was any requested by the appellant.  The respondents now contend that, because of such situation, the question cannot be raised here. We cannot accept this view.  The record shows clearly that the appellant proved the rescission of this contract, its cancellation and the deed from Crane and wife to respondents, and asserted, at the time of making such proof, that the purpose of it was to show that this note had been paid.  The failure of the court to make a special finding touching the matter cannot relieve us from the duty of considering it when it is made one of the assignments of errors.

We are confident that the trial court was in error in including this note and the interest on it in his judgment.  The judgment is reversed, and the cause remanded with instructions to set aside the judgment

heretofore made and enter another in accordance herewith.

MAIN, C. J., PARKER, PEMBERTON, and TOLMAN, JJ., concur.