[No. 19401.    Department Two.    November 23, 1925.]

## BERNIE E. WHITE, *Respondent*, v. PANAMA LUMBER & SHINGLE COMPANY, *Appellant*.[1]

PLEADING (170)—ISSUES, PROOF AND VARIANCE—EVIDENCE AD-MISSIBLE UNDER PLEADINGS—CONTRACTS. In an action to recover a broker's commission of $5,000, payable out of an initial payment of $15,000, in which the complaint alleged that the balance of the cash initial payment was paid by acceptance of a note for $7,525, it is error to interject at the trial a new issue by evidence and instructions thereon to the effect that such balance was paid by the acceptance of a series of subscriber's collateral notes in that amount; especially where, on appeal, respondent receded from that position taken below, and undertook to sustain the judgment on the theory of the complaint as drawn.

PAYMENT (6)—BY BILLS OR NOTES. A preexisting debt is not extinguished by acceptance of a promissory note given for the amount, unless it is so expressly agreed.

BROKERS (31)—ACTIONS FOR COMMISSIONS—PLEADING. In an action for a broker's commission based upon a legal written contract, it is error to refuse to strike out an allegation that it rested upon a moral obligation to pay for the services, and also, an allegation that it rested on promise "entered into orally and reduced to writing."

BROKERS (33-1)—ACTIONS FOR COMPENSATION—INSTRUCTIONS. In an action to recover a broker's commission payable out of an initial cash payment of $15,000 it is error to instruct the jury to the effect that the jury could consider, as payments on such initial payment, notes given to be applied on the balance of $45,000 due on the contract of purchase.

BROKERS (9)—EMPLOYMENT OF BROKER—CONSTRUCTION OF CONTRACT FOR COMMISSIONS. A broker cannot claim that he was prejudiced by an alteration of a contract calling for an initial cash payment of $15,000 out of which he was to be paid his commission, whereby a note was taken in lieu of part of the cash, where he acquiesced therein at the time, and the only issue is as to whether such note was taken in payment or not.

TOLMAN, C. J., dissents.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered January 2, 1925,

[1]Reported in 240 Pac. 913.

upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

*Thos. L. O'Leary*, for appellant.
*Troy & Yantis*, for respondent.

MACKINTOSH, J.—This case was once before considered by this court, and the opinion appears in 129 Wash. 189, 224 Pac. 563.

From the second amended complaint, upon which the trial was had, it appears that appellant owned a shingle mill in Olympia, and on January 10, 1921, made an agreement with the respondent whereby, if the respondent found a purchaser for the property who was willing "to pay the sum of $60,000 therefor and make a payment down in the sum of $15,000 we will pay you $5,000 commission *out of the initial payment made us of $15,000*." A purchaser was secured by the respondent, which purchaser paid to the appellant $7,475 in cash, it then being alleged that the purchaser executed its promissory demand note for $7,525, being the remaining portion of the $15,000 cash payment provided for, and that the promissory note was accepted by the appellant in lieu of cash; that the property was placed in possession of the purchaser, and that thereafter there was paid on the note referred to the sum of $3,925, making a total cash payment on the purchase price of $11,400. In several places in the complaint, it is alleged that the respondent's services should be paid out of the first $15,000 paid on the purchase price. It is alleged that the appellant paid to the respondent $1,400, and the suit is for the balance of $3,600.

The answer admits the ownership of the mill, admits that the appellant received a portion of the initial $15,000 payment and that the total amount received

on that payment amounted to $11,400, and alleges that the appellant has paid to the respondent all that it had received of the initial $15,000 in excess of $10,000. From a judgment in favor of the respondent, this appeal was taken.

The evidence shows that the purchaser procured by the respondent took a sixty-day option upon the property, it being contemplated that a cooperative corporation was to be organized by the purchaser, which would take over the mill, the plan being that twenty-five men would join the corporation, each of them paying $600 for his stock, thus securing the $15,000 initial payment. This option was continued for a further thirty-day period; but, before the expiration of this additional time, it became evident that twenty-five subscribers could not be secured willing to put up the $600 each. An arrangement was then made that all the cash which had been paid by the subscribers who had been secured, amounting to $7,475, would be delivered to the appellant to apply upon the $15,000 initial payment, and that the corporation should then take possession of the mill and operate it. At the time the new arrangement was made, the purchaser gave to the appellant its promissory note for the balance of the initial payment, to wit, $7,525. As security for the payment of this note, there were deposited notes of subscribers to the corporation, some of those notes being paid during the time that the mill was being operated by the purchaser and these payments credited on the initial payment of $15,000, the amount of these payments totaling $3,925. Thus is made up the total of $11,400. During the time that the mill was operated by the purchaser, the further sum of $2,848.33 was paid by the purchaser to the appellant, which according to the contract, was applied upon the principal of the $45,000 note which had been given to secure the

balance of the purchase price. The purchaser remained in possession of the mill for about nine months, when, it becoming apparent that it could not complete its payments it surrendered possession and returned the plant to the appellant.

According to the allegations of the complaint, the entire initial payment of $15,000 had been paid to the appellant, $7,475 of it in cash and the balance by a note for $7,525, which note the respondent alleged was received by appellant "in lieu and instead of cash." From this it is claimed that the respondent had earned his commission. Upon the trial, the respondent introduced testimony showing that, at the time, the note for $7,525 was given, certain notes signed by the subscribers to the stock of the proposed corporation were delivered to the appellant. The introduction of this testimony was objected to on the ground that it was immaterial under the pleadings, but the objection was overruled.

The testimony of the respondent in regard to these subscribers' notes tended to show that instead of having been accepted as collateral to the $7,525 note, the appellant had accepted them in lieu of the $7,525 note and in full discharge and payment of it; thus presenting an entirely different theory from that alleged in the complaint and seemingly irreconcilable with the fact that the $7,525 note was renewed some months after it had been originally given. When this testimony in regard to these subscribers' notes was originally offered, this statement was made by respondent's counsel:

"We are offering these notes, not as payment itself but as the collateral which went along with the note of seven thousand odd dollars which Mr. Bordeaux [the appellant] demanded and which we will show was given him."

It may be that this testimony, although immaterial, was not prejudicial when offered for the purpose stated by counsel. But thereafter respondent's counsel changed the purpose for which he was offering these notes, accompanied by this statement:

"There is one matter I would like to state. Your Honor will notice I inadvertently misrepresented the purpose of these notes. I understood they were security; now I understand they were not."

The notes then being admitted as payment of the balance due on the initial $15,000 payment, there was injected into the case a claim not set out in the complaint, which presented an entirely new issue, was inconsistent with the allegations of the complaint, and the testimony thus became not only improper but prejudicial. The prejudice arising from this confusion of statements did not cease here, however; for it appears from respondent's brief that he is now contending that his case is rested on the purchaser's note and that the subscribers' notes were only introduced on the theory that they were collateral, a position which is inconsistent with the record as we read it. The prejudice arising from this situation becomes more apparent when we turn to the court's instructions, where we find that the court instructed the jury that,

"If you find from all the circumstances in this case that the defendant accepted the note of Banner Lumber Co., [the purchaser] *or the series of notes of subscribers to the stock of the Banner Lumber Co.,* in payment of the balance of the $15,000 down payment on the purchase price of defendant's mill provided for in the option you will find that the said initial payment of $15,000 was made in full, whether the said note was finally paid or not;"

clearly allowing the jury to return a verdict against the appellant, if the jury believed that the subscribers' notes were taken in payment, a condition which the

respondent now denies that he was contending for. Under these circumstances this instruction was clearly erroneous.

Another error is claimed in that the court instructed the jury,

" . . . that it is not necessary that an express agreement to accept a note in payment of an obligation be proved but it is sufficient if it be shown that there was an understanding to that effect."

This instruction misstates the law, for the reason that, where a promissory note is given for a debt then in existence, the debt is not thereby extinguished, unless it was expressly agreed that an extinction should take place. This instruction is exactly contrary to the rule thus stated, and therefore was error. See: *Blenz v. Fogle*, 127 Wash. 224, 220 Pac. 790; *Sainsbury v. Wapato Fruit & Cold Storage Co.*, 132 Wash. 455, 232 Pac. 331.

Other errors are set up in appellant's brief and while, if standing alone, they are probably not sufficient to justify the court in granting a new trial, still, in view of the fact that a new trial is to be had, it may be well to call attention to them.

In paragraph V of the complaint, it is stated that "the defendant rested under a moral obligation to pay said sum to said plaintiff for said services." A motion was made to strike this as irrelevant and immaterial, and in our view this motion should have been granted, as also should have been a motion granted against another portion of said paragraph, where it is said "that the said promise and agreement was entered into orally and was reduced to writing." It is immaterial that there had been an oral agreement, as the written agreement was the only one upon which the respondent could recover.

Other instructions were objected to which embodied the erroneous idea contained in the instruction already referred to by leaving out of consideration the necessity of the respondent proving that an express agreement had been made to take a note in payment of the balance due on the initial payment. These instructions were also erroneous in referring to promissory notes being accepted in lieu of the balance on the initial payment, for the only note which, according to the complaint and the respondent's present statement, that could have been construed as having been accepted in lieu of that payment was the note of the purchaser.

Another error occurs in the instructions in that the court advised the jury that it might consider all payments made to the appellant by the purchaser, those coming from the sale of stock to subscribers as well as from the operation of the mill. It plainly appears that the payments made from the operation of the mill were to be applied upon the balance of $45,000 due upon the purchase price, and that such payments could not be credited upon the initial payment of $15,000. The contract between the parties, the pleadings, and all the testimony clearly establish that the respondent was only to be entitled to his commission out of the "down payment," "initial payment," or "first payment," which terms were used interchangeably and referred to the same payment.

The contention is made by the respondent that the agreement to take the note instead of cash not having been made with the respondent's consent, he is not bound thereby, and that the rule that an express agreement must be found to have existed for the substitution of a note for the balance due applies only between the parties to the contract and is not binding upon a third party, such as the respondent. The record, however, shows that the whole transaction was thoroughly

made known to the respondent and that he acquiesced in everything that was being done, that he assisted in obtaining subscribers to the stock company organized by the purchaser, that the stock subscription account and the mill operation account were kept separate at all times with the respondent's knowledge. Moreover, it is assuming something which does not exist for the respondent to contend that the contract had been altered. The contract called for a down payment of $15,000. A portion of that was paid in cash, and the question presented by respondent's complaint and the appellant's answer is whether the balance of that was paid by a note or was not paid at all. If the respondent's claim is correct, that the balance was paid by taking a note, there was certainly no change in the contract; and, as has already been said, if it did amount to a change, everything had been done with respondent's knowledge and consent.

Prejudicial testimony having been admitted and improper instructions given, the case is remanded for a new trial upon the question of whether the acceptance of the note of the purchaser amounted to a payment of the balance of the $15,000 initial payment.

Reversed.

Parker, Main, and Mitchell, JJ., concur.

Tolman, C. J. (dissenting)—Taking the entire record I cannot discover prejudice in the matter pointed out by the majority. I therefore dissent.