[No. 21766. Department One. July 25, 1929.]

JONES-SHORT MOTOR COMPANY, *Respondent*, v. HOMER BOLIN *et al.*, *Appellants.*[1]

*W. C. Brown,* for appellants.

*Chas. A. Johnson,* for respondent.

[1]Reported in 279 Pac. 395.

BEALS, J.—Defendants, by a contract of conditional sale, agreed to purchase from plaintiff corporation an automobile at the price of $1,245.50. When the contract was signed, defendants turned over to plaintiff a used Ford car for which they received credit by way of a "trade-in allowance" in the sum of $200. There was also delivered to plaintiff the note of defendant Homer Bolin, payable ninety days after date, for the sum of $127, the contract acknowledging the receipt of that amount as a cash payment. The balance of the purchase price was to be paid in monthly installments of $53.08 each. The contract contained the usual provisions to the effect that the car should remain the property of the seller until fully paid for, and that, in case of default by the purchaser, possession of the car might be retaken by the seller and all payments theretofore made retained as consideration for use of the car.

Among the provisions of the contract of conditional sale, are found the following:

"It is agreed that the title to, ownership in, and right of possession of said chattel are vested in you and your assigns (referring to the seller, plaintiff and respondent in this action), until said indebtedness and all other sums of money payable to you, whether evidenced by note, book account or otherwise, also any judgments which you, your successors or assigns may obtain therefor, shall have been fully paid in money, at which time ownership shall pass to me or us."

And again, in case of default by purchaser:

". . . then, in any such event, the full amount unpaid hereunder, including any note given, shall become due and payable forthwith, and you or your assigns may, without any previous notice or demand of performance, and without legal process, enter any premises where said chattel may be found, and take possession thereof, after which you may at your option,

make such disposition of said chattel as you shall deem fit, . . ."

At the bottom of the page upon which the contract is printed, appears the following in larger type than that in which is printed the contract itself:

"(Purchaser is NOT TO SIGN ANY NOTES representing deferred payments due under this contract.)"

Defendants, being dissatisfied with the car, returned the same to plaintiff, and refused to pay the note for $127 or any of the deferred installments of the purchase price. After much argument back and forth, plaintiff resold the car to a third party and brought this action against defendants, seeking judgment on the note above referred to. Defendants answered, admitting the purchase of the car, the execution of the note, and by way of cross-complaint alleged certain representations by plaintiff as to the performance of the automobile, that these representations were false and that the car was unsatisfactory, concluding with a prayer for judgment dismissing plaintiff's action, rescinding the contract of conditional sale, awarding defendants judgment against plaintiff for $200, the value of the used car delivered to plaintiff as a "turn-in" on account of the purchase of the new machine, for damages suffered by defendants on account of the alleged poor performance of the automobile purchased from plaintiff, and for general relief. Plaintiff in its reply denied the allegations of defendants' cross-complaint, and upon the issues so made up, the action was tried to the court sitting without a jury.

The court found that defendants' allegations that the car had been misrepresented to them by plaintiff were not supported by the evidence, and found against defendants upon all disputed questions of fact raised by their cross-complaint. The court further found that plaintiff had repossessed the automobile and sold the

same to a third party, that the note upon which plaintiff sued was a valid obligation of defendants and granted plaintiff judgment against defendants thereon, from which judgment defendants appeal.

Concerning appellants' allegations of misrepresentation and non-performance of its work by the new automobile, and similar claims advanced by them in their cross-complaint, we cannot find from the evidence that the same preponderates against the findings of the trial court, and we therefore refuse to disturb the same.

This leaves for consideration the question of appellants' liability upon their promissory note given at the time of the execution of the contract of conditional sale and referred to therein as a cash payment.

It may be conceded as a general proposition that, in contracts of conditional sale, provisions for the forfeiture to the vendor, in case of breach of the contract, of the down payment, made at the time of the signing of the contract, and of installments of the purchase price subsequently paid, as liquidated damages, or as agreed compensation for use of the property, are valid and enforceable. *Reddish v. Smith,* 10 Wash. 178, 38 Pac. 1003, 45 Am. St. 781; *Pease v. Baxter,* 12 Wash. 567, 41 Pac. 899; *Eilers Music House v. Oriental Co.,* 69 Wash. 618, 125 Pac. 1023. It is equally true that the vendor in a contract of conditional sale may, at his option, upon default by the purchaser, disaffirm the contract and repossess the property, or affirm the contract and sue for the purchase price, but that, as the two remedies are inconsistent, he cannot pursue both, and that the election by the vendor to pursue one of these remedies bars any right on his part to proceed by way of the other. *Winton Motor Carriage Co. v. Broadway Automobile Co.,* 65 Wash. 650, 118 Pac. 817, 37 L. R. A. (N. S.) 71; *Stewart & Holmes Drug Co. v. Reed,* 74 Wash. 401, 133 Pac. 577; *Thompson Co. v.*

*Mürphine,* 79 Wash. 672, 140 Pac. 1073; *Croup v. Hum-* *boldt Quartz & Placer Min. Co.,* 87 Wash. 248, 151 Pac. 493, L. R. A. 1918A 537; *Rose v. Rundall,* 86 Wash. 422, 150 Pac. 614.

The question, therefore, to be determined in this case is whether respondent, having disaffirmed the contract and repossessed the property conditionally sold, can hold appellants upon the note signed by appellant Homer Bolin and delivered to respondent at the time of the execution of the contract. In other words, was this note a payment upon the contract of such a nature that the subsequent disaffirmance of the contract by respondent leaves the unpaid note still a valid and subsisting obligation of appellants upon which they are liable, or was the note simply evidence of indebtedness as to a portion of the purchase price of the automobile, falling due ninety days after the date of the contract, and as such rendered void by respondent's disaffirmance of the contract and its repossession of the machine?

Respondent relies upon the case of *Norman v. Meeker,* 91 Wash. 534, 158 Pac. 78, Ann. Cas. 1917D 462. The facts of that case, briefly stated, were as follows: Norman sold to one Gregg for $1,000, by contract of conditional sale, a confectionery business. Gregg had expected to make a down payment of $500 in cash, but was unable to raise the money and induced defendant Meeker to execute his note for $500, payable to Norman, which note Gregg indorsed, the same being accepted by Norman as the down payment on the contract which recited that "second party (vendee) has paid a note for five hundred dollars ($500) for 60 days, the receipt whereof is hereby acknowledged." Gregg agreed to pay the balance of $500 at the rate of $25 a month. Gregg defaulted on the contract before

the Meeker note fell due, and Norman repossessed the property.

This court held that, in a suit by Norman against Meeker upon the note, Meeker was liable to Norman. This case was correctly decided; the situation was practically as though Gregg, the purchaser, having at the time of the purchase of the confectionery business the note of some third party payable to himself, turned the same over to his vendor by indorsement as all or a portion of the down payment on the contract. In such a situation, the note would be simply property accepted by the vendor as appellants' Ford car was accepted by respondent in the case at bar. Meeker's note was made payable direct to Norman and its indorsement by Gregg amounted to no more than if in the case at bar appellants had signed a guaranty as to the condition of their Ford. A clear distinction exists between the acceptance by the vendor of the note of a third party as a down payment upon a contract of conditional sale and the acceptance by the vendor of the note of the purchaser, made at the time, payable to vendor, covering a portion of the purchase price.

We conclude that the case at bar is not controlled by the decision of this court in the case of *Norman v. Meeker, supra.*

The question before us for determination is important and is not easy of determination.

Appellants, in support of the proposition that an election to reclaim the property is a waiver of the right to enforce the contract as to any unpaid balance on the purchase price, cite the cases of *Kimble Motor Car Co. v. Androw,* 125 Wash. 225, 215 Pac. 340, and *Bank of California v. Clear Lake Lumber Co.,* 146 Wash. 543, 264 Pac. 705, in which cases other decisions of this court are cited establishing the principle invoked by appellants.

As to the applicability of this principle to the case at bar, appellants cite the case of *Blenz v. Fogle,* 127 Wash. 224, 220 Pac. 790. In that case, a very complicated state of facts was presented for determination. It appeared that Blenz had, by contract of conditional sale, agreed to sell to Fogle real and personal property for $37,000. One thousand dollars was paid in cash, $9,000 was to be paid in a few months, and $27,000 in several years, possession to be delivered upon payment of the $9,000. The contract did not state the proportion of the total consideration which applied to the personal property. A supplemental agreement was made shortly after the execution of the original contract, whereby time for the payment of the $9,000 installment was extended, all other portions of the original contract to be continued in force. On the date fixed for the payment of the $9,000, Fogle, the purchaser, at the request of Blenz, the seller, executed and delivered to a third person his note for $1,000 and delivered to Blenz his three promissory notes, two for $1,000 each and one for $6,000, the total making up the $9,000 then due on the original contract.

At this time, Blenz executed a deed to Fogle, and Fogle executed a note to Blenz for $27,000 together with a mortgage securing the same, all of which papers were put in escrow to be delivered to the respective parties according to the terms of an escrow agreement. On the same day, Fogle, to secure the $6,000 note in favor of Blenz, executed, in favor of Blenz, a chattel mortgage covering personal property, some of which was property transferred by Blenz to Fogle, and some of which was property previously belonging to Fogle. Soon thereafter Fogle was placed in possession of the property. He continued in possession thereof for about a year and a half, at the expiration of which period Blenz elected to declare the contract forfeited by rea-

son of Fogle's failure to keep the same in good standing and drew down the escrow papers. Shortly thereafter, Fogle sued Blenz upon the $6,000 note, and almost immediately after the institution of that action brought another suit against Fogle seeking a decree quieting his title to the property covered by the contract.

Referring to the $6,000 note, Blenz testified on the trial that he received the same as cash. In the course of the opinion, this court says:

"Our real problem is this, is the obligation evidenced by the $6,000 note, in legal effect, still the same obligation as that amount of the agreed sale price of the original land contract? If it is, then we have here a case where the vendor is claiming forfeiture of the rights of his vendee in the property and in payments made on the agreed sale price, and at the same time seeking to recover a portion of the sale price remaining unpaid. This, of course, a vendor cannot do. In other words, he cannot reclaim the property under a forfeiture clause in the sale contract, such as is here drawn in question, and at the same time recover any portion of the unpaid sale price. This view of the law is too elementary to call for extended citation of authorities to lend it support. 27 R. C. L. 666."

This court held that Blenz had asserted his right of forfeiture before seeking recovery on the $6,000 note; that this note was given to further evidence so much of the original purchase price which Fogle had agreed to pay for the property; that it did not appear from the record that the $6,000 note was given or accepted in complete satisfaction *pro tanto* of the specified purchase price, but that the note was given only as additional evidence of so much of the consideration unpaid at the time it was executed, and that Blenz, having elected to declare the contract forfeited, could not maintain an action upon the note.

We are of the opinion that the rule of law laid down

in the case last discussed is more nearly applicable to the facts disclosed by the record now before us, than is the rule laid down in the case of *Norman v. Meeker, supra.*

The note sued upon herein was part of the transaction evidenced by the contract of conditional sale entered into between the parties. This contract expressly states that title to the automobile covered thereby shall remain in respondent until payment of the purchase price "and all other sums of money payable to you, whether evidenced by note, book account or otherwise." It also provides that, upon certain contingencies, the seller may declare the full unpaid balance, "including any note given," due and payable forthwith. These portions of the contract are quoted above. The first of the two quotations from the contract, in so far as the same refers to any note, would seem to contemplate the reservation of title to the automobile in respondent as security for all indebtedness due respondent from appellants whether on account of the purchase price of the automobile or otherwise, but the second of the two quotations refers directly to any note given as part of the purchase price. In this connection, the statement, above quoted, printed at the bottom of the contract, to the effect that the purchaser is not to sign any notes representing deferred payments due under this contract, is significant. If the purchaser was not to sign a note for any deferred payment under the contract, for what payment did the contract contemplate that he might sign a note? Manifestly only for the down payment or a portion thereof. If, then, the contract contemplated the possibility that the purchaser might sign a note for all or a portion of the down payment, in our opinion the note so signed by appellant Homer Bolin became and remained, as stated in the case of *Blenz v. Fogle, supra,* a *pro tanto*

obligation evidencing so much of the agreed sale price of the property, and respondent, having, before payment of the note, elected to declare the contract forfeited and repossessed the property, cannot now recover judgment against appellants upon the note sued on in this action.

The fact that the amount of the note is referred to in the contract of conditional sale as cash, is immaterial. In fact, it was not a cash payment, and the deal was arranged by, and of course was satisfactory to, respondent. In such a case, the actual facts may be shown and the matter will be adjudicated upon the facts, not upon fiction.

This view is supported by the decisions of this court in the cases of *Cahill v. McCown,* 141 Wash. 82, 250 Pac. 646, and *Bank of California v. Clear Lake Lumber Co.,* 146 Wash. 543, 264 Pac. 705.

The judgment appealed from is reversed, with directions to dismiss the action.

FULLERTON, TOLMAN, HOLCOMB, and PARKER, JJ., concur.