[No. 22714. Department One. March 25, 1931.]

CLARK E. RATHKE *et al., Respondents,* v. DEXTER HORTON NATIONAL BANK OF SEATTLE *et al., Appellants.*[1]

*Poe, Falknor, Falknor & Emory,* for appellants.
*Tucker & Tucker,* for respondents.

MITCHELL, J.—In May, 1926, Ella I. Waggoner, as vendor, entered into an executory contract with Clark E. Rathke, by which she agreed to sell, and he agreed to buy, certain real property in King county. Both parties signed the contract, which, among other things, says:

"(1) The entire purchase price for the above described real property is the sum of twenty-three thou-

[1] Reported in 297 Pac. 181.

sand dollars ($23,000) of which the sum of two thousand ($2,000) has this day been paid, the receipt whereof is hereby acknowledged, and the balance of twenty-one thousand dollars ($21,000) of said purchase price shall be paid as follows:

"(a) One thousand dollars ($1,000) shall be paid on or before May 1, 1929.

"(b) The further sum of one thousand dollars ($1,000) shall be paid on or before May 1, 1930.

"(c) The further sum of one thousand dollars ($1,000) shall be paid on or before May 1, 1931.

"(d) The further sum of one thousand dollars ($1,000) shall be paid on or before May 1, 1932.

"(e) The further sum of one thousand dollars ($1,000) shall be paid on or before May 1, 1933.

"(f) The further sum of sixteen thousand dollars ($16,000) shall be paid on or before May 1, 1938.

"The unpaid balances of said principal amount of said purchase price shall bear interest at the rate of six per cent (6%) per annum from date hereof until paid, which said interest shall be payable monthly commencing with June 1, 1926, said interest to cease from date of payment on all sums paid on account of the principal amount of said purchase price; any interest payments not made when due to draw interest at the rate of eight per cent (8%) per annum from maturity thereof until paid."

The contract also provides that, with certain exceptions, not important here, all payments of principal and interest shall be made at the First National Bank of Auburn, Washington, to the credit of the account of Ella I. Waggoner. There are other provisions in the contract usual and common in such agreements, consisting, among others, of a "time essence" clause and clauses relating to rescission and forfeiture.

At the same time, as a part of the same transaction, and in compliance with the recitation in the contract that "the sum of two thousand ($2,000) has this day been paid, the receipt whereof is hereby acknowl-

edged,'' Clark E. Rathke and his wife executed and delivered to Ella I. Waggoner their promissory note, dated May 1, 1926, payable to her on May 1, 1928, in the sum of two thousand dollars with interest at six per cent per annum, payable monthly, there being in the note an interlined provision granting privilege to pay one thousand dollars or more of the principal at any interest pay date. And, at the same time and place, Rathke and his wife, in order to secure payment of the note, executed and delivered to Ella I. Waggoner a mortgage upon certain real property belonging to them.

Subsequent to May, 1926, and prior to the commencement of this action, Ella I. Waggoner died, whereupon the Dexter Horton National Bank of Seattle was duly appointed and qualified as the executor of her will, and thereafter a decree of distribution of the assets of the estate was entered, by which, as provided in the will, one-half of the estate was distributed to Estella Walton and the other half to the bank as trustee for Garna Louise Walton, Calvin Andrew Walton, Velma Ellen Walton, and Nina Irene Walton, parties to this action.

No part of the twenty-one thousand dollars, balance of the principal due under the contract, was paid, but monthly interest payments thereon were rather promptly made until July, 1928, and thereafter the October, 1928, interest was paid in January, 1929, all of such interest payments after November, 1927, being made by the Foster-Rogers Milling Company, to whom, it appears, the vendee's interest under the real estate contract had passed. In March, 1929, on account of prior notice of defaults in the payment of interest, with demand that such payments be made within a reasonable time, else rescission of the contract and for-

feiture would be declared, which demand was not complied with, written notice of cancellation and rescission of the real estate contract was given, and thereupon the successors in interest of the vendor entered into, and have since retained, possession of the property.

In the meantime, Rathke and wife regularly paid interest upon their note, together with monthly payments upon the principal commencing in May, 1928, until, at or about the commencement of this action, there remained due on it $945, with interest from May 1, 1929. Payments made on the note and mortgage, after and including March, 1929, were made under protest, upon the claim that the rescission and cancellation of the real estate contract that month had the legal effect of cancelling the balance due at that time on the note and mortgage.

Thereafter, this action was brought by Rathke and wife for judgment cancelling their note and mortgage, and to recover back the amounts they had paid thereon under protest. Defendants, successors in interest of Ella I. Waggoner, deceased, answered the complaint, denying any right of the plaintiffs to relief, and interposed a cross-complaint for judgment on the promissory note and foreclosure of the mortgage. The decision and judgment of the trial court were for the plaintiffs. Defendants have appealed.

▮ The appellants contend that the note and mortgage were given in *payment, pro tanto,* of the purchase price of the property involved in the executory real estate contract, and are enforcible, while the respondents contend that the note and mortgage were given not as payment, but as *additional evidence* of two thousand dollars of the contract price of the land, and that any balance due on the note and mortgage at the date of rescission of the real estate contract became uncol-

lectible. The question in the case therefore is, were the note and mortgage given in payment of, or merely as additional evidence of, that much of the purchase price of the property involved in the real estate contract?

We have examined the cases of *Norman v. Meeker,* 91 Wash. 534, 158 Pac. 78, Ann. Cas. 1917D 462, and *Sterling v. Loudenback,* 155 Wash. 36, 283 Pac. 476, cited by appellants, and other cases referred to in their brief, and also the cases of *Rose v. Rundall,* 86 Wash. 422, 150 Pac. 614, *Croup v. Humboldt Quartz & Placer Mining Co.,* 87 Wash. 248, 151 Pac. 493, L. R. A. 1918A 537; *Blenz v. Fogle,* 127 Wash. 224, 220 Pac. 790, *Sainsbury v. Wapato Fruit & Cold Storage Co.,* 132 Wash. 455, 232 Pac. 331; *Cahill v. McCown,* 141 Wash. 82, 250 Pac. 646, and *Jones-Short Motor Co. v. Bolin,* 153 Wash. 198, 279 Pac. 395, as well as other cases referred to by respondents, from all of which we reach the conclusion, expressed by counsel in this case, that the question involved is a question of fact, or similar to what was said in *Blenz v. Fogle,* 127 Wash. 224, 220 Pac. 790,

"Our real problem is this, is the obligation evidenced by the $6,000 note, in legal effect, still the same obligation as that amount of the agreed sale price of the original land contract?"

and in *Sainsbury v. Wapato Fruit & Cold Storage Co.,* 132 Wash. 455, 232 Pac. 331,

"The real question, then, is whether this $1,416.64 note was in part payment of the purchase price, or merely an evidence thereof."

and in *Jones-Short Motor Co. v. Bolin,* 153 Wash. 198, 279 Pac. 395,

"In such a case, the actual facts may be shown and the matter will be adjudicated upon the facts, not upon fiction."

In this view of the controversy, we have carefully examined and considered the facts and circumstances proven on the trial, which, taken collectively, in our opinion necessitate a reversal of the judgment, for the following reasons:

(1) Ella I. Waggoner, in agreeing to sell the land mentioned, wanted two thousand dollars in money, but, as Rathke could not spare that much from his business, it was agreed that he and his wife should give the note and mortgage instead.

(2) The real estate contract, upon stating that twenty-three thousand dollars was the entire purchase price, says "of which the sum of two thousand ($2,000) has this day been paid, the receipt whereof is hereby acknowledged," and at no place in the contract are the note and mortgage referred to.

(3) The note and mortgage, by their terms, in no way refer to the real estate contract or the lands covered by it.

(4) The contract, after admitting receipt of the two thousand dollars, speaks of twenty-one thousand dollars, not as the balance due on the *contract* price, but as the balance due on the *purchase* price, and divides that amount into six future payments, specifying due dates. The two thousand dollars, or the note and mortgage instead, became as separate and distinct from the real estate contract and its terms as though they had never been thought of in connection with the same transaction. The contract, for the purposes of its fulfillment, or any or all of its conditions with respect to rescission for defaults and in every other way, depended in no manner whatever upon the note and mortgage.

(5) The instrument designated as a record of payments on the contract kept at the bank on behalf of

the vendor attached to the contract was further designated as "balance $21,000," and the testimony shows that Rathke knew the record so stated during the time that he personally made payments of interest on the contract.

(6) Significantly, as indicative of the common understanding of the respective parties concerning the relation of the note and mortgage to the contract, the party who succeeded to the rights of Rathke and wife under the real estate contract, thereafter for months, and down until the contract was rescinded, made all payments that were made on it, but paid nothing whatever on the note and mortgage, while, as to the note and mortgage, Rathke made all payments of both interest and principal without any default, down until the commencement of this action.

(7) And of considerable significance it is noticeable that the terms of the note with respect to the payments of interest are substantially different in phraseology from those of the real estate contract, in that they do not provide for interest upon interest payments not made when due.

There are other facts and circumstances in the case of less importance and weight, tending in the same direction, that we think need not be set out in detail.

Upon consideration of all the evidence, we are satisfied that it preponderates in favor of the finding and conclusion that the note secured by the mortgage was not intended to be additional evidence of the indebtedness of a portion of the contract price of the lands, but, on the contrary, constituted, to that extent, payment upon the purchase price of such a nature that the subsequent disaffirmance or cancellation of the real estate contract by the vendor, or her successors in interest, leaves the note and mortgage valid and subsisting obligations, subject to be put into judgment and

foreclosure, as demanded by the appellants in their cross-complaint.

Reversed and remanded, with directions to proceed in accordance with the views herein expressed.

TOLMAN, C. J., HOLCOMB, MAIN, and PARKER, JJ., concur.