[No. 14599½.  Department Two.  July 9, 1918.]

# W. B. JORDAN et al., Respondents, v. L. V. PEEK, Appellant.[1]

SALES—CONDITIONAL SALES — CONTRACTS — CONSTRUCTION. A contract to take over a stock of merchandise constitutes a conditional sales contract, where the buyers agreed to purchase the stock at a future date and meanwhile in disposing of the stock and carrying on the business, to act as agents of the sellers, who were guaranteed against loss and were entitled to hold the buyers to payment of the full purchase price, whereupon the contract "shall then become a full, complete and executed bill of sale."

SALES—CONDITIONAL SALES — REMEDIES — ELECTION. A provision in a conditional sales contract giving the vendors the right to take over the stock and apply the proceeds on the purchase price and maintain suit for the balance, is contrary to law and to Civ. Code, S. D. § 1314, there being only a choice of remedies; and having elected to take the property, the vendors cannot recover the unpaid balance of the purchase price.

Appeal from a judgment of the superior court for King county, Jurey, J., entered November 7, 1917, upon findings in favor of the plaintiffs, in an action on contract, tried to the court. Reversed.

*Lane & Thompson,* for appellant.

*J. E. McGrew,* for respondents.

MACKINTOSH, J.—The respondents, a partnership doing business as W. B. & W. G. Jordan, seek recovery against the appellant, L. V. Peek, as guarantor of a note in the sum of $4,555.44, executed in a transaction between the parties hereto and A. W. and C. G. Lindquist, doing business as Lindquist Brothers.

Lindquist Brothers were the owners of a certain general mercantile business at Diamond, South Dakota. Sometime prior to December, 1911, the firm of Lind-

[1]Reported in 173 Pac. 726.

quist Brothers went into bankruptcy, a trustee being appointed in the bankruptcy proceedings. On December 29, 1911, W. B. and W. G. Jordan purchased of the trustee a stock of goods of the bankrupt firm for $4,555.44, the amount of the note here sued upon, the Lindquists agreeing to purchase from the Jordans on or before December 29, 1912, the said stock for the above mentioned sum of $4,555.44, together with interest thereon at the rate of six per cent per annum from the date of purchase till paid. It was agreed that the stock should be paid for in full on or before December 29, 1912. This contract was entered into at Diamond, South Dakota. In addition to the foregoing, paragraph 3 of the contract stipulated as follows:

"The first and second parties agree that the said second parties shall act as the agents of the first parties in selling and disposing of said goods, wares and merchandise, and in collecting said accounts at the store formerly occupied by Lindquist Brothers in Diamond, South Dakota, and that said second parties, as the agents of the first parties, shall conduct and carry on said business for and in the name of said first parties, or such other name as the said first parties shall designate, until December 29, 1912, or until the said second parties shall have paid to said first parties the full purchase price of said property, with interest thereon."

Then follow recitals as to the conduct of the business as "agents," paragraph 7 of the contract then providing as follows:

"In case the said second parties shall not elect to take over said goods, wares and merchandise, furniture, fixtures, accounts and other property, as herein described, before the 29th day of December, 1912, they, the said second parties, shall on said 29th day of December, 1912, be obligated to take over all such remaining property, accounts, etc., and to pay to said first parties the full purchase price therefor, as herein

stated, and the said first parties shall on said 29th day of December, 1912, be entitled to demand of and receive from said second parties the full purchase price hereof, with interest as herein provided, and this transaction shall then be and become a full, complete, and executed bill of sale of all said property to said second parties.''

Paragraph 12 of the contract reads as follows:

''In case either of said second parties should for any reason decline to go on with said business, or should cease to be actively engaged, in said business, then said first parties may at their election close out all remaining property, accounts, etc., and apply the proceeds therefrom on the said purchase price, and immediately recover from said second parties the balance remaining due on said purchase price.''

Paragraph 13 of the contract reads as follows:

''It is the true purpose and intent of this contract that said second parties shall take over said stock of goods, and all other property herein referred to on or before December 29, 1912, on the terms herein provided for, and in any event, to guarantee said first parties against any loss, cost, or damage which, under any circumstances may result to them by reason of their purchase of said stock and other property and the execution of this contract.''

As a part of this transaction, the note here sued upon was executed by Lindquist Brothers to the Jordans, with the appellant, Peek, as guarantor, in the following notation to the contract above mentioned:

''In consideration of the sum of one (1) dollar to me in hand paid by the above named W. B. and W. G. Jordan, and for other good and valuable considerations, I, the undersigned, do hereby guarantee the due performance of the foregoing contract by, and on behalf of the said second parties, and also do hereby guarantee the prompt payment of the full purchase price therein named, on or before December 29, 1912.''

In December, 1912, after one year's conduct of the business under the terms of the foregoing agreement, Lindquist Brothers were unable to pay for the stock as agreed, and secured an extension of another twelve months for such payment. At the end of the second year they were still unable to pay the Jordans, and obtained still another extension for one year more. In July, 1914, and while the business was being conducted by the wives of the Lindquists in the protracted absence of their husbands, the Jordans, without process of law, seized the stock then remaining on hand in the store in Diamond, South Dakota, together with certain stock added thereto by the Lindquists in their conduct of the business. No accounting was had between any of the parties, save for certain credits allowed after the commencement of this action, and no suit has been instituted by the Jordans against any other than Peek, the guarantor. An action brought by the respondents against Peek in the superior court for King county, as guarantor, resulted in a judgment for the respondents in the sum of $3,457.26, from which Peek has appealed to this court.

Appellant's argument in general is that, according to the terms of the contract above set forth, the relation of principal and agent between the Lindquists and the Jordans was created, and that the transaction was not one of outright purchase and sale, but amounted to a conditional sale. He further argues that, regarding the contract as a conditional sale, the seizure by the Jordans of the stock in the store at Diamond, without process of law, was contrary not only to the requirements of the statutes of South Dakota controlling such conditional sales, but also to the settled rule laid down by the courts. He also contends that the respondents never accounted for the entire stock of

goods taken by them, that they have attempted to account only for that portion of the stock which they considered part of the original stock, and that they have taken the money which came in in the course of the business and applied it on new goods purchased from them, and that, when they seized the goods and took them to their place of business in Minnesota and there sold them, out of the proceeds they paid themselves for new stock furnished the South Dakota store and applied the balance realized on the sale on the purchase price of the stock covered by the contract here under consideration.

The interpretation sought to be given to the contract by the respondents is rather difficult to grasp. At times it appears to be that the contract amounted to an absolute sale; at other times, that it is in the nature of a conditional sale. The contract, it appears to us, is not subject to any other interpretation than that it was one of conditional sale. The second and third paragraphs provide explicitly that the Lindquists agreed to purchase at a future date, and, in the meantime, should act as the agents of the Jordans in selling and disposing of the stock and carrying on the business in the Jordans' name until the Lindquists "shall have paid to said first parties the full purchase price." Several paragraphs are taken up with provisions as to the conduct of the business by the Lindquists as Jordans' agents, which include the payment of salaries to the Lindquists. As we view it, there is nothing contained in paragraphs 7 and 13 inconsistent with this interpretation; the agreement that the true purpose and intent of the contract is that the Lindquists should take over the stock of goods on December 29, 1912, on the terms provided in the contract, and to guarantee the Jordans against any loss which might result to them by reason of their purchase of the stock from the

trustee in bankruptcy, is accordant with the other provisions of the contract. The Lindquists were engaged to take and pay for the stock in December, 1912, and the respondents could have held them to the engagement, and if they had done so then (or at the expiration of the time as extended), the respondents would have been "entitled to demand and receive the full purchase price thereof, and this transaction shall *then* become a full, complete and executed bill of sale." Paragraph 13 recites that the Lindquists should take the property on the terms "provided for," which were that the title should not pass until payment had been made. It was intended that the contract should result in a completed sale in December, 1912, or at a later date to which both parties had agreed that the contract should be continued.

If this was a conditional sale, the respondents, upon the breach by the Lindquists of their promises, had the election of either one of two remedies; (a) a suit for the balance due under the contract, or (b) a taking of the stock. Even though the contract may have provided, as it does in paragraph 12, that, upon the breach by the Lindquists, the respondents could take all the stock and apply the proceeds on the purchase price and maintain suit for the balance thereof, the two remedies cannot be thus jointly pursued. The provision for taking possession and also suing for the balance due is contrary to § 1314 of the code of civil procedure of South Dakota, which provides:

"If a buyer of personal property does not pay for it according to the contract, and it remains in possession of the seller after payment is due, the seller may rescind the sale or may enforce the lien for the price in the manner provided in the title on liens."

Not only is it contrary to statutory provision, but it is in conflict with the great weight of judicial author-

ity, including the decisions of our court, for we have held:

"While a vendor in a conditional sale has a choice of remedies—that is to say, he may disaffirm the sale by retaking the property, or he may affirm it by suing to recover the balance of the purchase price—the rule is general that he cannot exercise both remedies. He cannot retake the property and then recover the purchase price, even though the contract may so expressly provide; this, on the principle that to retake the property is to rescind the sale, and hence, there is no consideration to uphold the promise to pay for it." *Jones v. Reynolds,* 45 Wash. 371, 88 Pac. 577.

In the case of *Stewart & Holmes Drug Co. v. Reed,* 74 Wash. 401, 133 Pac. 577, we held:

"The law is well settled that where, as in this state, the title retained by the seller on conditional sale is an absolute title, on a breach of the conditional sale by the buyer, the seller has a choice of remedies. He may either disaffirm the contract and retake the chattel, or he may treat the transaction as an absolute sale and sue on the contract for the purchase price. But since these remedies are inconsistent, he cannot do both. The assertion of one is an abandonment of the other . . . Such an election may be invoked by a third person as a defense to an attempted assertion of the alternative remedy against him."

See, also, *Eilers Music House v. Douglass,* 90 Wash. 683, 156 Pac. 937, L. R. A. 1916E 613.

The respondents, having elected to take the property, cannot now repudiate their choice and receive the unpaid balance of the purchase price.

The judgment of the lower court is reversed and the action dismissed.

MAIN, C. J., HOLCOMB, MOUNT, and CHADWICK, JJ., concur.