[No. 19088. Department One. May 15, 1925.]

John P. Duke, *as Supervisor of Banking, Respondent,* v. Henry V. Benson *et al., Appellants.*[1]

Guaranty (13)—Discharge—Breach of Executory Contract— Election of Remedies by Vendor. The guarantor of payments due on a contract for the purchase of land, traded and deeded by the guarantor to a bank, is discharged where on default in payments on the contract, the bank accepted the purchaser's waiver of his rights, rented the property, and authorized the guarantor, as its agent, to resell the land; since it thereby elected its remedy.

Appeal from a judgment of the superior court for King county, Reynolds, J., entered June 14, 1924, in favor of the plaintiff, in an action on contract, tried to the court. Reversed.

*Wright, Froude, Allen & Hilen,* for appellants.
*W. V. Tanner* and *John P. Garvin,* for respondent.

Askren, J.—On January 4, 1919, Henry V. Benson was the owner of an improved piece of Seattle real estate which was incumbered by a mortgage in the sum of $1,800, and a contract of sale held by one Tobin, upon which there was a balance due of $2,000, and the Scandinavian-American Bank of Seattle was the owner

[1]Reported in 236 Pac. 77.

of a certain piece of real estate in Snohomish county. On that day Benson and the bank entered into a contract by which Benson was to purchase the Snohomish county property for $2,100, to be paid $100 cash and the equity in the Seattle real estate above referred to of $2,000. On the 14th of January the bank deeded the Snohomish county property to Benson, and on the same day Benson and his wife transferred title to the Seattle property. As a part of the same transaction, Benson assigned the Tobin contract and executed the following guaranty as to the payments still due: "The undersigned guarantees all payments on this contract. Henry V. Benson." Later Tobin's interest was transferred to one Kilbourne, who, after making a few payments, sent word that he could not continue to handle the property.

For some time prior to this, Benson had his office at the bank, was working for the bank on a salary and commission, and looking after real estate matters for it. Benson took the matter up with Mr. Stockbridge, vice president of the bank and the officer who had charge of real estate in which the bank was interested. At Stockbridge's suggestion, Benson called to see Kilbourne to get a quitclaim deed in the name of the bank. Stockbridge said the bank was dissatisfied with the terms and the $25 per month payments that were coming in on the contract, and told Benson to re-sell the property and get a larger cash payment down and a better monthly payment. When Benson attempted to get a quitclaim deed from Kilbourne he ascertained that there were outstanding judgments against Kilbourne, so that a quitclaim deed would be of no advantage. Thereafter Benson had some conversation with Stockbridge and the property was rented. About May 5th, Stockbridge died. On June 15, 1921, Kilbourne sent a letter addressed to Benson in which he waived

his rights under the contract. This letter was filed for record on August 20, 1921, and a policy of title insurance issued in favor of the bank. The bank closed its doors on June 30, 1921.

Prior to the time the liquidator took charge of the bank, and after Kilbourne's default in payments, no one asked Benson to make good upon his guaranty. Shortly after the liquidator took charge, a request was made upon Benson to pay, which he refused upon the ground that he had been released. The mortgage became due, was foreclosed after the bank had tendered to Benson the defense of the same, and at the time of the trial of this action the period of redemption had expired. The trial court found for the bank, his theory evidently being that there was not sufficient testimony showing that the officers of the bank, prior to its liquidation, had released Benson, and that, in any event, the liquidator or supervisor of the bank had never released him. But we think the question of whether or not there was a release by the bank's officers prior to liquidation does not depend upon the attitude of the supervisor. If the bank had released Benson prior to the closing of its doors it would be an effectual bar against the supervisor.

It is the contention of appellant that when Stockbridge notified Benson to have the contract cancelled, and when the letter from Kilbourne was filed for record quieting title in the bank, and the property rented by the bank, that it had made its election as to its rights, for, when the payments became delinquent, it could either demand that Benson should make them or it could cancel the contract and keep the property. We think this contention sound. The property belonging to Benson was transferred to the bank as a part of the purchase price for the Snohomish county land, and the

Seattle real estate then became the property of the bank.

Much space has been devoted to the question of the character of the undertaking by Benson, the appellant insisting that it is an original obligation, and the respondent that it is but a guaranty of the contract of the principal, Kilbourne. But we think this point not decisive of the question. Assuming, without deciding, that it is an original obligation of Benson's, that obligation could be no greater than it would be if he were one of the vendees of the property with Kilbourne. The bank then, as to either Kilbourne or Benson, could sue for the balance due upon the contract, or it could cancel the contract, and either or both of the vendees would then be discharged from further liability. The whole question must be determined by the fact as to whether or not the bank declared the contract forfeited, and the testimony upon this point given by Benson was uncontradicted.

Respondent claims that the present case is controlled by our decision in *Hardinger v. Hainsworth,* 111 Wash. 590, 191 Pac. 755, but we think that case not controlling, for the reason that we there held that title was held by Hardinger as security for money which he had paid at the time he took the assignment of the contract. In this case the bank did not hold title to the Seattle property as security. It took the property as payment, with the additional guaranty of Benson that the payments should be met. The distinction applied here may be readily seen if we assume that, within six months after the transfers were made, Kilbourne had decided to forfeit the contract and in the meantime the property had become exceedingly valuable. Under his agreement Benson could not have demanded that the bank accept from him the balance of the money due and allow him to keep the property, since the bank at all times had

the right to cancel the contract and keep the property, or, in lieu thereof, demand the payment of the guaranty and allow Benson to be subrogated to Kilbourne's rights under the contract.

Nor is *Ekre v. Cain*, 66 Wash. 659, 120 Pac. 523, inconsistent with our holding here. In that case there had never been payment of the obligation sued upon, while here it will be seen that the acceptance and use of the property freed from the contract by the bank was such a payment or discharge of the obligation as to relieve all parties to the contract from any obligation assumed thereunder.

It follows, therefore, that the bank having cancelled the contract prior to the time of liquidation, and having elected to accept the property in lieu of the guaranty, Benson was released at the time the liquidator took charge.

The judgment of the superior court is reversed with instructions to dismiss the action.

TOLMAN, C. J., MAIN, BRIDGES, and PARKER, JJ., concur.