[No. 22725. *En Banc.* June 30, 1931.]

W. H. COUGHLIN, *Appellant,* v. ARDEN L. SMITH *et al., Respondents.*[1]

*Allen, Froude, Hilen & Askren,* for appellant.
*George E. DeSteiguer,* for respondents.

MITCHELL, J.—This action grows out of a contract dated July 7, 1928, consisting of two parts: First, an executory contract of sale of real estate by Arden L. Smith and wife to W. H. Anderson and wife; and second, an executed contract of the sale and delivery of household furniture by Arden L. Smith and wife to W. H. Coughlin. The contract was signed by all five of the interested parties.

Smith and wife owned certain real property which they sold for $6,500, through W. H. Coughlin, as agent, on an executory real estate contract, to Anderson and wife. There was a furnished residence on the property. Smith and wife agreed to sell and Anderson and wife agreed to buy and pay for the real property on the installment plan set out in the contract. Coughlin was to have the furniture in the dwelling house in consideration of his services as agent, and in consideration of his promise, agreement, and guaranty of the payment to Smith and wife of a certain portion of the purchase price of the real property.

Coughlin and his wife held an executory real estate contract with one Abel, on which Abel still owed one thousand dollars, which contract was delivered to the North Coast Bank & Trust Company, or its predecessor, as collateral to Coughlin's promise and agreement with respect to payments to be made to Smith and wife

under the terms of their real estate contract with Anderson and wife.

Anderson and wife failed to pay installments of fifty dollars each on their contract on May 10 and June 10, 1929, and also taxes on the property they had agreed to pay, and which Smith and wife were compelled to pay on July 6, 1929. On account of these defaults, Smith and wife, on July 8, 1929, gave Anderson and wife, Coughlin, and the bank written notice of termination of the real estate contract, demanding immediate possession of the real property, and further demanding payment from Coughlin and the bank in the sum of $835.97 as the balance due at that time, together with interest on the deferred payments for the last three months. Upon giving that notice, Smith and wife took possession of the real estate and have held it at all times since, without any protest on the part of any one.

Thereafter, this suit was brought by Coughlin to recover from the bank the one thousand dollars it had collected as final payment on the Coughlin and Abel real estate contract. The bank answered, admitting that it had the one thousand dollars and asked the protection of the court in paying it out. Smith and wife, by their answer, claimed they were entitled to $835.97, together with certain specified interest, as mentioned in their written notice of cancellation of the contract, out of the one thousand dollars held by the bank as money belonging to Coughlin.

On the trial of the case, upon stipulation of the parties in open court as to certain facts, upon the pleadings, argument of counsel and consideration by the court, the cause was decided against the plaintiff, whereupon the court announced that the plaintiff might have sixty days in which to elect whether or not he would make payments necessary to reinstate the con-

tract of sale. The plaintiff, by his attorney, announced in open court that he elected to stand on the written notice of cancellation of the real estate contract given by Smith and wife, and would not make any payment at all. Thereupon, the court made findings and conclusions in favor of Smith and wife, upon which judgment was entered providing, among other things, that they recover from Coughlin and the bank $835.97 and certain interest. No exception was taken to the findings of fact, but, contending that they do not justify the conclusions and judgment, the plaintiff has appealed.

The court found that Smith and wife, Anderson and wife, and Coughlin entered into the contract in question. It names the parties, describes the land, and states the purchase price and terms of payment; the purchasers are required to pay taxes and assessments prior to delinquency, and keep the residence building insured in favor of the vendors; it provides that any extension of time of payment or waiver of default of any provision of the contract shall not be construed as a waiver of any other; and that, upon full performance, the vendors will give a good and sufficient warranty deed to the property.

It provides:

"Time is of the essence of this agreement, and in case of failure of the purchasers to make any of the payments by them agreed to be made or to perform any of their agreements herein contained, this agreement may, at the election of the vendors, be terminated by the vendors, and upon such termination all rights of the purchasers hereunder and all their rights in and to said real estate shall cease and terminate, and the vendors shall retain all payments made upon said price as liquidated damages, and shall be entitled to immediate possession of said real estate and the whole thereof."

Upon the other subject, the contract provides that Coughlin should have the furniture in the residence as full payment for his commission in making the sale of the place *and as consideration for his executing the contract.* The contract says:

"The said W. H. Coughlin, for the consideration aforesaid, hereby promises, agrees and guarantees that the first One Thousand Dollars ($1,000) of the principal of said purchase price, including said Fifty Dollars ($50) already paid, and all interest upon the balance of said purchase price up to the time when said One Thousand Dollars ($1,000) of the principal shall have been paid, shall be paid promptly in accordance with the terms hereof, and if at any time after any default of the purchasers in any payment, up to the time of the payment of One Thousand Dollars ($1,000) and interest, the vendors shall give written notice to the said W. H. Coughlin, or send by registered mail to the said W. H. Coughlin, addressed to him at 602 American Bank Building, Seattle, Washington, notice that such default has occurred, then the said W. H. Coughlin agrees to cure such default by making the payment in which such default has been made within 20 days after such notice. . . .

"If the said Coughlin shall make any such payment after default herein by the purchasers, then the said Coughlin shall have the right to declare this agreement terminated in so far as the purchasers, and all rights of the purchasers, are concerned, by giving written notice thereof to the purchasers, which said notice may be either delivered to the said purchasers personally or mailed to them by registered mail at 2206 East Galer street, Seattle, Washington, and upon giving of such notice after such payment the said Coughlin shall succeed to all rights of the purchasers under this agreement, and shall be entitled to immediate possession of said real estate. If said notice is given by registered mail the notice shall be complete and effective upon mailing.

"The right of the vendors to terminate this agreement for default of the purchasers shall not be affected by the right of the said Coughlin to so terminate this

agreement, and if the vendors shall so terminate this agreement they shall still have the right to receive, and the said Coughlin shall still be bound to pay, any balance remaining unpaid of the first One Thousand Dollars ($1,000) of said price with interest on the whole unpaid balance up to the time when the said One Thousand Dollars ($1,000) shall have been paid. But if the said Coughlin shall cure all defaults of the purchasers under this agreement within 20 days after he has been served with personal notice, or notice by registered mail as aforesaid, of the termination of this agreement, then he shall be entitled to succeed to all rights of the purchasers hereunder.

"If any payments are made by the said Coughlin upon said purchase price after default by the purchasers, or if the said Coughlin shall cure any other default of the purchasers hereunder, then the vendors may conclusively assume that the said Coughlin has succeeded to all rights of the purchasers hereunder, and in such case the purchasers consent that the vendors may regard the said Coughlin as the successor in interest of the purchasers, and that the vendors upon full payment of said purchase price may make and deliver to the said Coughlin a deed to the said Coughlin of the said real estate, instead of making such deed to the purchasers hereinbefore mentioned, and that said deed shall be in full satisfaction of all obligations of the vendors hereunder; provided, however, that if after any such payment by the said Coughlin, or curing of default by the said Coughlin, he gives to the vendors a written notice signed by him that he has been fully reimbursed by said purchasers for all payments made by him, and all defaults cured by him, then the said purchasers, if their obligations hereunder are not in default, shall be reinstated in their said rights.

"It is agreed, however, that the said Coughlin, as a part of such reimbursement, shall be entitled to interest at the rate of seven per cent per annum upon all payments made by him on account of the default of the said purchasers."

Then follows the provision concerning the terms and delivery to the bank of the payment on the Coughlin

and Abel contract, of which there is no dispute in this case.

The court further found that defaults were made by Anderson and wife as to the payments due in May and June, 1929, and that, on July 6, 1929, the vendors had paid delinquent taxes, which, under the contract, the Andersons should have paid earlier. Also, the court found that, on July 8, 1929, Smith and his wife gave to all the other parties to the contract and to the bank written notice, which, upon referring in detail to the real estate contract and its terms, stated that the payments due in May and June had not been made, that the vendors had been compelled to pay delinquent taxes in the sum of $167.20, and further said:

"You and each of you are further notified that said vendors, on account of said defaults in said contract by the vendees, have elected and do hereby elect to terminate said agreement and all rights of the purchasers therein in and to said real estate, and to retain all payments made upon the purchase price, and said vendors do further demand immediate possession of said real estate and that until the undersigned secures such possession all rent for said real estate shall be paid to the undersigned.

"The said vendors do further demand payment from the said W. H. Coughlin and from said Brotherhood Bank & Trust Company (now known as The North Coast Bank & Trust Company) of the sum of $835.97, with interest on $6,335.97 from the 1st day of April, 1929, at the rate of seven per cent per annum, the obligation of the said W. H. Coughlin therefor arising from his guaranty in said contract of sale and the obligation of said Bank & Trust Company therefor arising on account of money paid to said Bank & Trust Company upon an agreement between W. H. Coughlin and Alice I. Coughlin, now deceased, his wife, as vendors, and Harry A. Abel, as vendee, which last named agreement is referred to in the contract of sale first hereinbefore described."

Appellant's first contention is that the notice by the Smiths of the termination of the real estate contract without giving twenty days' notice ended the whole contract, including his obligation to pay Smith and wife.

True, in one place the contract provides that, if at any time after any default of the purchasers in any payment up to one thousand dollars and interest the vendors shall give written notice to Coughlin that such default has occurred, then he agrees to cure such default by making payment within twenty days. But this provision imposes no obligation upon Smith and wife. It says that *if* they give Coughlin notice of any default of Anderson and wife in any payment up to one thousand dollars and interest, then Coughlin agrees to cure such default by making payment within twenty days after notice to him. The provision is purely optional with Smith and wife, who, if they do not exercise their choice in that respect, do not lose or impair any of their rights under the other terms of the contract nor in any manner whatever disadvantage Coughlin.

But, for the purposes of this case, a succeeding provision of the contract fixes the rights of Smith and wife and the liability of Coughlin; for, notwithstanding rights given to Coughlin upon his making payments upon being called on to do so, the contract provides that Smith and wife shall have the right to terminate the real estate contract upon default of the purchasers, and that, if they shall so terminate it, "they shall still have the right to receive, and the said Coughlin shall still be bound to pay, any balance remaining unpaid of the first one thousand dollars," etc., and then follows the provision that Coughlin shall cure the purchasers' defaults within twenty days after notice to him of the termination of this agreement, when he shall be en-

titled to succeed to all the rights of the purchasers hereunder.

Thus it appears that the word "terminate" and "termination" used in the real estate contract are qualified with respect to the rights and obligations of Coughlin, so that he, being conversant with the terms of his contract, may, within twenty days after receipt of the written notice from the vendors in language purporting to terminate the contract, cure all defaults of the purchasers, and thus set aside the nominal termination of it, so far as his rights are concerned. Had the appellant, within twenty days after receiving the written notice in question, paid or tendered payment of the amount of defaults of the purchasers, then he would have saved his rights under the contract; not having done so, he cannot complain of the judgment in this respect.

Appellant further contends that, Coughlin's obligation being only a guaranty to cure the defaults of the Andersons, the retaking of the possession of the property by the vendors, after the notice given by them, became a bar to any action on appellant's promise to pay. In support of that contention counsel cite a number of authorities such as *Jordan v. Peek,* 103 Wash. 94, 173 Pac. 726, and *Duke v. Benson,* 134 Wash. 495, 236 Pac. 77; and if the legal effect of Coughlin's obligation is the same as those of guarantors in those cases, counsel's contention must prevail. In each of those cases, a contract had been entered into between parties, one of whose promises to pay was guaranteed by the person sued after the primary contract had been terminated.

In the present case, the contract of the appellant is more than that. It says that, for a valuable consideration, he "promises, agrees and guarantees." The contract here is two-fold, and provides for substantial

rights and obligations with respect to each and all of the parties, all of whom sign, not any one of them by way of endorsement on the contract, but in form, manner, and substance as an orginal party to the contract. By its terms, Coughlin received all of the furniture in the residence, and also the right, upon complying with certain terms to which he agreed, to succeed, upon the default of the purchasers, to their rights to buy property of considerable value. As to his obligation as defined by the contract, he promised, not only that a certain amount of the purchase price would be paid promptly by the purchasers, and that, if not so paid, he would make the payments upon twenty days' notice, if called upon to do so, but, as hereinbefore stated, he obligated himself still further as follows:

"The right of the vendors to terminate this agreement for default of the purchasers shall not be affected by the right of the said Coughlin to so terminate this agreement, *and if the vendors shall so terminate this agreement they shall still have the right to receive, and the said Coughlin shall still be bound to pay,* any balance remaining unpaid of the first one thousand dollars ($1,000) of said price with interest on the whole unpaid balance up to the time when the said one thousand dollars ($1,000) shall have been paid."

This is an original undertaking for a consideration furnished by those for whose benefit it was made, and in which the purchasers of the real estate were in no way interested.

This language, and especially the portion we italicize, cannot be ignored or overlooked. If the vendors terminate their contract with the purchasers of the real estate, as they did by the notice given, Coughlin was still bound to pay a certain amount to the vendors. It is this provision in the contract that marks the distinction between this case and the cases of *Jordan v. Peek*, 103 Wash. 94, 173 Pac. 726, and *Duke v. Benson,*

134 Wash. 495, 236 Pac. 77, of which cases this court, in *Sterling v. Loudenback,* 155 Wash. 36, 283 Pac. 476, said:

"In each case the guaranty sued upon was a part of the contract which had been terminated, there being no other contract between the parties."

In each of those cases, the party sued had agreed only that he would guarantee payments to be made by the purchaser; when, therefore, the contract was cancelled by the vendor, who retook the property, nothing was left to be paid by either the purchaser or the guarantor—the whole contract was cancelled. And in this case, if Coughlin had simply guaranteed certain payments to be made by the Andersons, then, upon the termination by the vendors of the real estate contract, so far as the rights of the vendees were concerned, and possession of the property taken by the vendors, Coughlin would have been free; but such was not the case. There was another and further contract between him and the vendors, by which he agreed that, even if the vendors did terminate the contract with the purchasers of the real estate, he would, nevertheless, make certain payments mentioned that are involved in the present controversy.

In the *Sterling v. Loudenback* case, just cited, Loudenback and wife agreed that if one Hodge, who as vendee had entered into a forfeitable real estate contract with Sterling, failed to make certain payments, they would do so to the extent of three thousand dollars, "whether or not the said real estate contract with vendee Hodge is continued in force by vendors Sterling"; that is, Loudenback and wife were not to be relieved from their obligation, "even though it might be that the said real estate contract with vendee Hodge should be forfeited in the meantime because of default on vendee Hodge's part of the contract."

Speaking of that agreement, we said that it

". . . expressly provides for the contingency of the forfeiture of the contract between respondent [Sterling] and Hodge, and states that appellants [Loudenbacks] are not to be relieved from their bond even though the Hodge contract be forfeited."

The holding in that case summed up in the syllabus was as follows:

"While a vendor's forfeiture of a contract to purchase lands on default of an overdue installment may be an election barring recovery against the purchaser, it does not bar an action on a bond given by a third person, upon a valuable consideration, guaranteeing payment of the first three installments and expressly providing that forfeiture of the contract of purchase would not relieve the obligor from making the payments."

The obligation in that case was, in legal effect, the same as the obligation in the present case. The doctrine of that case is applicable to this one and, in our opinion, answers appellant's second contention.

Judgment affirmed.

TOLMAN, C. J., MILLARD, BEELER, and BEALS, JJ., concur.

HOLCOMB, J. (dissenting)—According to my view, the terms and effects of the contract are not properly construed by the majority.

However, there are some features of the case that are all-controlling.

The notice given by respondents, as set out in the prevailing opinion, is positively nothing but a notice of forfeiture and termination of the contract. It included, also, a demand from respondents upon appellant that he fulfill his guaranty. Whatever option appellant had under the contract he could waive. He could take respondents at their word and treat the contract as re-

scinded, which he did. No demand was made upon him under the twenty-day provision respecting curing defaults, as provided in the contract, and appellant was in no wise bound to comply with that option in the contract when the contract had been terminated by notice and no demand made upon him under the twenty-day provision.

The majority decision is opposed to the great weight of authority and several decisions by this court.

We have held that where a party, even without right, claims to rescind a contract, if the other party agrees to the rescission, or does not object thereto and permits it to be rescinded, there is a rescission by mutual consent. *Croup v. Humboldt Quartz & Placer Mining Co.,* 87 Wash. 248, 151 Pac. 493. Compare, as to election by forfeiture, *Blenz v. Fogle,* 127 Wash. 224, 220 Pac. 790; *Sainsbury v. Wapato Fruit & Cold Storage Co.,* 132 Wash. 455, 232 Pac. 331. As to effect of declaration of forfeiture, see 13 C. J. 601; *Woodard v. Willamette Valley Irrigated Land Co.,* 89 Ore. 10, 173 Pac. 262; and *Massey v. Becker,* 90 Ore. 461, 176 Pac. 425.

It being clear that, since respondents voluntarily put themselves distinctly within the rule of those cases and texts, they should be left as they placed themselves, and the guaranty was thereby extinguished. If not, however, the *Loudenback* case, cited by the majority, is widely dissimilar in the contract there in suit from that here. This contract, and the situation created, fall within the decisions in *Jordan v. Peek,* 103 Wash. 94, 173 Pac. 726; *Duke v. Benson,* 134 Wash. 495, 236 Pac. 77; *Jones-Short Motor Co. v. Bolin,* 153 Wash. 198, 279 Pac. 395.

For these reasons, I dissent. The judgment should be reversed.

PARKER and MAIN, JJ., concur with HOLCOMB, J.