IRVIN J. JACOBSON, Plaintiff and Counterdefendant-Appellant, *v.* DEVON BANK, Defendant and Counterplaintiff-Appellee.

First District (1st Division)   No. 62725

Opinion filed June 14, 1976.—Rehearing denied July 28, 1976.

Irvin J. Jacobson, of Chicago, for appellant, *pro se.*

Greenbaum & Browne, of Chicago (Ernest D. Simon, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

By his complaint Irvin J. Jacobson (plaintiff), sought a declaration that a written guaranty which he had given to Devon Bank, a corporation (Bank), was void. The Bank filed an answer and a counterclaim praying for money judgment upon the guaranty. The parties filed a written stipulation of facts and memoranda of law. After full hearing, the trial court dismissed plaintiff's complaint with prejudice and entered judgment on the counterclaim in favor of the Bank for $22,126.60. Plaintiff appeals.

In this court, plaintiff contends that a guarantor is discharged from liability when his rights have been impaired by acts of the holder; material alterations in the obligation of the debtor, even for the benefit of the surety, operate to discharge the guaranty and undertakings of sureties are strictly construed and not extended by implication or construction. The Bank depends upon the contention that plaintiff, by his own agreement, has waived all defenses which he raised to his liability on his guaranty.

During Feburary of 1969, Peterson Maplewood Building Corporation (Debtor) executed and delivered a promissory note payable to the Bank in the amount of $243,812.50. The note evidenced a loan and was secured by an assignment of the beneficial interest in a land trust. Plaintiff, an officer and director of the Debtor, executed a written personal guaranty running to the Bank. This guaranty limited plaintiff's indebtedness to $235,000. In addition to a number of provisions, not pertinent here, this guaranty provided:

> "The liability hereunder shall in no wise be affected or impaired by (and said Bank is hereby expressly authorized to make from time to time, without notice to anyone) any sale, pledge, surrender, compromise, release, renewal, extension, indulgence, alteration, exchange, change in, or modification of any said indebtedness, liabilities and obligations, either expressed or implied, or any contract or contracts evidencing any thereof, or any security or collateral therefor."

The original note of the Debtor was replaced by a series of similar notes extending the maturity of the debt and differing slightly in amount and rate of interest. On August 1, 1970, the Debtor executed a new note for

$201,590.45 payable August 31, 1970. No additional guaranty was executed by plaintiff. In November of 1970, plaintiff advised the Bank by letter that he was no longer an officer or director of the Debtor and that he would not give a renewal of his guaranty in connection with another proposed extension of the Debtor's obligation. It is agreed that plaintiff verbally informed officers of the Bank that he no longer considered himself liable on the guaranty and was advised in return that they felt the guaranty was still in effect. Thereafter, on November 30, 1970, the Debtor executed another collateral installment note, this time in the sum of $212,762.14, as a renewal or extension of the original debt. No additional guaranty was given by plaintiff.

In September of 1971, the Bank and the Debtor entered into a written agreement reciting that the Debtor owed $209,038.34 plus interest for which the Bank retained the beneficial interest in the land trust as collateral. The agreement recited that the parties desired to extend the maturity date of the note so that the land, which was the subject of the collateral, could be improved, developed and sold. The Bank and the Debtor accordingly agreed to extend maturity of the note to April 30, 1972. The Debtor agreed to payment of $25,000 plus interest to date and to install proper sewer and water facilities, pay delinquent taxes on the property and then to pay an additional sum in return for release of a portion of the collateral. The agreement recited that it specifically omitted the question of disclaimer of plaintiff's personal guaranty and the Bank reserved its rights to seek enforcement of the guaranty in event of default by the Debtor.

Additional renewal notes were executed and delivered by the Debtor to the Bank. No additional guaranty was executed by plaintiff. Thereafter the Debtor defaulted in payment of the indebtedness and the Bank served notice upon plaintiff and others regarding its intention to sell the collateral. In due course the collateral was sold and purchased by the Bank. No point is raised regarding the amount of the balance of the indebtedness due by virtue of the guaranty as set forth in the judgment order.

■■■ Determination of the rights of these parties must commence with a statement of general principles which have been accepted and established for many years. "It is a rule that guaranty agreements are to be strictly construed in favor of the guarantor * * *" and "the liability of a guarantor cannot be extended by construction." (*King Korn Stamp Co. v. Guaranty Bank & Trust Co.* (1969), 114 Ill. App. 2d 428, 437, 438, 252 N.E.2d 734, *leave to appeal denied*, 42 Ill. 2d 585. See also 20 Ill. L. & Pr. *Guaranty* §31 (1956).) However, "[w]here a contract of guaranty is unequivocal in its terms it must be interpreted according to the language used, for it is presumed that the parties meant what their language clearly

imports." (*National Acceptance Co. v. Exchange National Bank* (1968), 101 Ill. App. 2d 396, 402, 243 N.E.2d 264.) In addition, "[i]t is elementary that a guarantor is not liable for any thing which he did not agree to and if the creditor and principal have entered into an agreement materially different from that contemplated by the instrument of guaranty, the guarantor shall be released." *Claude Southern Corp. v. Henry's Drive-In, Inc.* (1964), 51 Ill. App. 2d 289, 299-300, 201 N.E.2d 127, *leave to appeal denied*, 31 Ill. 2d 629. See also 20 Ill. L. & Pr. *Guaranty* §63 (1956).

The case before us hinges on the language of the guaranty. We are required to note and to consider the broad liability expressly assumed in the instrument of guaranty above set forth. The guarantor, (plaintiff), expressly assumed responsibility for the liability of the Debtor up to, but not beyond, a certain amount. Plaintiff expressly agreed that his liability should not "be affected or impaired by * * * any sale, pledge, surrender, compromise, release, renewal, extension, indulgence, alteration, exchange, change in or modification" of any liability of the Debtor both expressed and implied. The Bank was expressly authorized to make any of these changes and modifications without notice. It is, indeed, difficult to conceive of a broader or more inclusive form of guaranty. The document before us places no limitation upon the liability of the guarantor to pay the indebtedness of the Debtor beyond expression of a maximum amount.

■■ In the case before us, we are not dealing with an ambiguous document which requires construction by the court. We are dealing with a legal document executed by these parties presumably in an effort to implement their intention as "their language clearly imports." (*National Acceptance Co. v. Exchange National Bank*, 101 Ill. App. 2d 396, 402.) In this type of situation we are obliged to give effect to the clear and unambiguous language which the parties ratified and adopted. The importance of the language in a contract of guaranty may be illustrated and accentuated by comparing *First Bank & Trust Co. v. Post* (1973), 10 Ill. App. 3d 127, 293 N.E.2d 907, to *In re Application of Bickel* (1973), 14 Ill. App. 3d 813, 303 N.E.2d 541. In both cases the creditor failed to take proper action to realize the benefit from collateral given by the debtor. In the first of these cases, this court held that the guarantor was discharged since the language of his guaranty did not waive impairment of collateral by the creditor. In the latter case, this court refused to discharge a guarantor where the creditor had failed to take proper steps concerning the collateral because the guaranty expressly provided that delay or omission by the creditor in exercising any right or power under the note should not affect the liability of the guarantor. This court applied the clear and unambiguous language of the guaranty, precisely as we are obliged to do in the case before us.

In *Bickel*, this court cited and followed *Barrett v. Shanks* (1943), 382 Ill. 434, 47 N.E.2d 481, which we regard as clear authority applicable to the case at bar. The Supreme Court there applied the clear and unambiguous terms of the guaranty which excused the creditor from the duty of availing itself of the proceeds of collateral. The Supreme Court pointed out that in such a situation "there is nothing for the courts to construe." 382 Ill. 434, 442.

In our opinion, the trial court reached the proper conclusion when it followed the language of the guaranty and entered judgment in favor of the Bank on its counterclaim.

Judgment affirmed.

BURKE and SIMON, JJ., concur.