ILLINI FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellant, v. CARL CHILDERS, JR., et al., Defendants-Appellees.

Fifth District    No. 79-598

Opinion filed September 25, 1980.

James H. Bandy, of Listeman, Bandy & Hamilton, of Belleville, for appellant.

Sterling & Altman, P. C., of Fairview Heights, for appellees Charles Childers, Jr., and Ben A. Parrish.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

This case of first impression in Illinois presents the question of whether forfeiture of an installment contract for the sale of land serves to discharge guarantors of part of the purchase price where the contract provides that the liabilities of the guarantors "shall remain notwithstanding any forfeiture."

Plaintiff, Illini Federal Savings and Loan Association (hereafter referred to as "Illini"), brought an action against the defendants, Carl Childers, Jr. (also spelled "Childres" at times in the record), Ben A. Parrish, Edward H. Davis, James H. Lewis and Charlotte A. Lewis, as guarantors of an amount plaintiff alleged was due under an installment contract for the sale of land between plaintiff as seller and Landcare, Inc., a Tennessee corporation (hereafter referred to as "Landcare") as buyer. The buyer is not a party to this cause. The installment contract gave the seller the right to declare a forfeiture of the rights of the buyer in the event of the buyer's default and provided in such an event both for the buyer's forfeiture of payments made under the contract and for the seller's retention of them as liquidated damages. Upon the buyer's subsequent failure to continue making payments as they became due, plaintiff brought this action against defendants as guarantors for the amount of the monthly installments then outstanding and unpaid by the buyer. Later plaintiff declared a forfeiture and took possession of the premises. After plaintiff's declaration of forfeiture defendants moved for summary judgment. Granting the motion, the trial court found that "because the installment contract for the sale of real estate was disaffirmed, the contract of guaranty entered into by the defendants was also terminated,

as the subject of the contract for guaranty was no longer in existence." From the court's order that the "termination of the installment contract for the sale of land also served to discharge defendants, the guarantors, of that contract," plaintiff appeals.

Under this contract for deed, designated as "Articles of Agreement for Deed," Landcare agreed to purchase from Illini for $550,000 certain real property in Williamson County improved with a Travelodge Motel. Landcare paid $50,000 initially; it was to pay the balance of $500,000 in equal monthly installments of $3,728, including interest on the unpaid balance, together with the sum of one-twelfth of assessed taxes and insurance premiums. Installment payments were to be applied first to escrow for taxes and insurance, then to interest and finally to principal. Title would, of course, remain in Illini until the balance had been paid, at which time it would pass to Landcare. The contract further provided, as indicated above, that upon default of an installment, at the election of Illini,

> "* * * should any such default or breach continue for sixty (60) days, Seller shall serve a 'thirty day demand for strict compliance' on Buyer and should Buyer fail to cure said default or defaults in full Seller shall have the right to declare a forfeiture of all rights of the Buyer under this agreement and after such forfeiture and determination, the Buyer shall forfeit all payments hereunder and such payments shall be retained by the Seller as liquidated damages of the Seller and in such event the Seller shall have the right to re-enter and take possession of the premises."

A subsequent paragraph of the contract provides,

> "It is further expressly agreed between the parties hereto that the remedy of forfeiture herein given to the Seller shall not be exclusive of any other remedy, but that the Seller shall in case of default or breach, or for any reason herein contained shall have every other remedy given by this Agreement and by law or equity, and shall have the right to maintain and prosecute any and every such remedy, contemporaneously or otherwise, with the exercise of the right of forfeiture, or any other right herein given. More specifically, all the remedies available may be prosecuted against the Buyer, *except that the other signatories by agreeing to this contract, agree that the liabilities expressed in 5e of the sales contract attached as Exhibit A shall remain notwithstanding any forfeiture* and if paid by reason of judicial action or demand shall not operate as a prepayment if said contract has not been forfeited." (Emphasis added.)

The articles of agreement for deed were in furtherance of a "Contract to Purchase Real Estate," paragraph e of which provides,

"Dr. Ben Parrish and Carl Childres, Jr., will guarantee the amount by which the loan at any time exceeds $450,000.00 subject to maximum liability of $50,000.00. James H. and Charlotte A. Lewis will jointly and severally guarantee the sum of $50,000.00 of the loan. Edward H. Davis will guarantee the sum of $50,000.00 of the loan. These individuals also guarantee the performance of all the borrowers' [sic] obligations as described herein and in the Article of Agreement for Deed, this guarantee being limited to the amounts as set out above, *  ."

The paragraph is typewritten except for the final comma and the asterisk, which are handwritten. At the bottom of the page appears the following, also handwritten: "*  except that said liability of Dr. Ben Parrish and Carl Childers, Jr. [sic] shall terminate at such time as the loan balance reaches $450,000.00" By "loan" the parties to the contract appear to refer to the $500,000 balance of the purchase price. Paragraph a, in which the term appears, is preceded as follows: "5. The terms of the Bond for Deed Contract are:". Paragraphs b through i set forth further terms of that contract. Under a customary bond for deed the buyer does not acquire title until he has paid the stated consideration. There is no suggestion in the contract that Illini would advance to Landcare the amount of the balance of the consideration or that Landcare would repay such a sum. Nor is there any suggestion in the record that such a transaction did, in fact, occur.

On the final page of the Articles of Agreement for Deed, the following appears beneath the signatures of the agents of the parties to the contract:

"—Guaranty—

The undersigned guarantors having read this Articles of Agreement for Deed, the security agreement and attached exhibits, hereby guarantee the covenants therein contained to the extent as described in the sales contract marked Exhibit A in the same manner as if their names were read into this document in place of Landcare, Incorporated subject however to the limits of liability expressly provided."

There follow the signatures of the five defendants, who were, according to Illini in its brief, shareholders of Landcare, Incorporated. James H. Lewis, who signed the articles of agreement for deed for Landcare was also its president. The only other signatures appearing on these two instruments are those relating to attestation and notarization. We notice that the contract to purchase real estate is not marked, "Exhibit A."

Both of the agreements were entered into on November 15, 1973. Payments were to begin on January 1, 1974. According to Illini in its brief,

Landcare, Inc., made 11 payments. On September 26, 1975, plaintiff filed this suit against defendants on their guarantee alleging that Landcare, Inc., had been in default on the payments due under the agreement since December 1974, and that the arrearage amounted to $60,483.30. Later, on October 7, 1975, according to defendants in their subsequent memorandum in support of motion for summary judgment, Illini demanded strict compliance. On December 30, 1975, the contract was forfeited and possession of the property was surrendered to Illini. Thereafter, on July 31, 1979, defendants filed their motion for summary judgment wherein they claimed that the termination of the installment contract discharged the defendants as "alleged" guarantors. There they stated that Illini had retained all payments made by Landcare as liquidated damages. About three years after the forfeiture, on February 1, 1978, Illini sold the property, according to Illini's responses to interrogatories propounded by defendants, to another buyer, Bon Dor Investments, for $600,000. The property was encumbered by a mortgage held by Illini of $540,000.

A good deal of the litigation in this case between 1976 and 1978 was devoted to the disposition of defendants' contesting of the trial court's jurisdiction of their persons and to the disposition of a third-party complaint which was eventually severed from the instant cause. We note that although all five of the guarantors are included as defendants in the complaint and were served with process, only two of them, Carl Childers, Jr., and Ben D. Parrish, who guaranteed the amount by which the "loan" at any time exceeded $450,000, subject to a limit of $50,000, and whose liability was to terminate when the "loan" balance reached $450,000, appear to have participated in the defense. According to one of Illini's responses to defendants' interrogatories, the balance of sums Landcare owed Illini on December 1, 1974, was $483,701.32. In plaintiff's motion to limit interrogatories and request for production of documents, Illini states, "At the time of said demand for strict compliance and forfeiture of said contract, there was still due on principal and interest the sum of $546,159.65 * * * ."

■■ On appeal Illini contends that the trial court erred in granting defendants' motion for summary judgment because of the agreement of "the other signatories" that their liabilities, as expressed in the paragraph which sets forth the conditions of the guarantee, would "remain notwithstanding any forfeiture." We agree.

At the outset we observe that the phrase, "the other signatories," can refer only to the guarantors, nor do defendants dispute that it does. Although Illinois courts have not addressed the issue of whether a buyer's forfeiture under an installment contract for the sale of land discharges a guarantor of any part of the purchase price, our independent research discloses that two other jurisdictions have considered the effect of the buyer's forfeiture upon the guarantor's obligation.

In *Glassell v. Coleman* (1892), 94 Cal. 260, 29 P. 508, the plaintiff as seller sought from guarantors the amount of damages he claimed to have suffered as a result of the buyer's default upon an installment contract for the sale of land. The defendants had guaranteed up to a limit of $25,000 the buyer's payment of two installments which were not to become due for 10 and 15 years respectively from the date of the execution of the agreement. The guarantee was given in a note executed by the buyer as "additional security" for the payment of the two installments. In addition to the installments the buyer had agreed to pay certain amounts of interest annually. The agreement provided that a default in the payment of interest for a period of six months could, at the option of the seller, cause the entire principal sum to become due. Before either of the two installments had become due, the buyer defaulted in the payment of the interest. The seller then declared a forfeiture, as provided in the contract, and notified the buyer that the entire principal sum would be due six months after the interest had been due. Upon the buyer's failure to pay either interest or principal, the seller brought the action on the guaranty for damages in the amount of $50,000 in consequence of the buyer's breach.

The Supreme Court of California found that the defendants had guaranteed to pay part of the amount of the installments which had not become due before the forfeiture and that they had not guaranteed any liability of the buyer for breach of the agreement.[1] The court determined that the forfeiture had extinguished any further obligation of the buyer under the contract and, necessarily, the obligation of the guarantors as well:

> "Upon the election by the plaintiff to rescind the contract by claiming a forfeiture by [the buyer] of all his rights under the contract, the contract itself and each of its provisions or terms ceased to be a subsisting or enforceable obligation against [the buyer].
>
> * * * [The buyer's] liability to the plaintiff upon his agreement to pay the purchase price for the land ceased with the plaintiff's rescission of his right to receive the land upon such payment. * * * The obligation of the [guarantors], being subsidiary to that of [the buyer], and being limited to such portion of his liability on the note as they had guarantied [*sic*], it follows that upon the termination of his liability thereon by virtue of the forfeiture claimed by the

---

[1] In Illinois a seller's declaration of forfeiture bars any subsequent action by the seller for damages. (*Hooven v. Woodiel* (1975), 27 Ill. App. 3d 467, 327 N.E.2d 276.) We view the vendor's declaration of the termination of the contract as a disaffirmance of the contract and will not permit the vendor subsequently to invoke a remedy, such as an action for damages, which is based on an affirmance of that same contract. See *Wollenberger v. Hoover* (1931), 346 Ill. 511, 179 N.E. 42, and *Morey v. Huston* (1967), 85 Ill. App. 2d 195, 228 N.E.2d 544.

plaintiff, all liability of the [guarantors] to the plaintiff ceased at the same time." (94 Cal. 260, 266-68, 29 P. 508, 509-10.)

There was no express provision in the agreement in *Glassell* for any continuation of the guarantors' liability despite forfeiture.

Such a provision was, however, part of an agreement by guarantors of a portion of the purchase price of an installment contract for the sale of land in *Sterling v. Loudenback* (1929), 155 Wash. 36, 283 P. 476. There the agreement expressly provided that the "obligors are not to be relieved from this Bond agreement even though it might be that the said Real Estate Contract with vendee * * * should be forfeited in the meantime because of default on vendee['s] * * * part of the contract." (155 Wash. 36, 39, 283 P. 476, 477.) The agreement in *Sterling* was one for an exchange of real properties which required defendants to procure a purchaser for the property they wished to exchange. Having found a buyer who purchased their property under an installment contract, defendants executed a bond in which they promised to pay, in the event of their buyer's default in the payment of the first three installments of $1,000 each, the amount in default up to $3,000. When the buyer of defendants' property failed to pay the first installment of $1,000, the seller declared the contract to defendants' buyer forfeited and sued on defendants' bond.

The Supreme Court of Washington rejected the argument that the seller's declaration of the termination of the contract released the guarantors of the $3,000 portion of the buyer's contract from any obligation on their guaranty. The court found:

"The bond expressly provides for the contingency of the forfeiture of the contract between [seller] and [buyer] and states that [defendants] are not to be relieved from their bond even though the [buyer's] contract be forfeited." (155 Wash. 36, 42, 283 P. 476, 478.)

The court considered the nature of the contract between the parties, the terms of the agreement and the language of the bond, concluding,

"The bond which they signed, and which is here sued upon, provided directly for the possibility that [the buyer] might not make his payments, and that [the seller] might declare the contract between himself and [the buyer] forfeited. [Defendants] were interested in the closing of the deal, and their bond partakes more nearly of the nature of an original obligation than does the ordinary contract of guaranty; in other words, their bond was a part of the consideration for the executed contract of exchange between themselves and [the seller]. [Defendants] did not guarantee the [buyer's] contract, but did not guarantee that $3,000 on account of

the principal would be paid thereon." 155 Wash. 36, 44, 283 P. 476, 479.

In the later case of *Coughlin v. Smith* (1931), 163 Wash. 290, 1 P.2d 215, the Supreme Court of Washington considered an agreement similar to the one in *Sterling* insofar as it provided expressly for a continuation of the guarantor's liability despite forfeiture of the installment contract for the sale of land. In *Coughlin* the cause of action grew out of a contract consisting of two parts, one for an installment contract for the sale of real property to two buyers and the other for the sale of household furniture to still another buyer, who was the sellers' real estate agent in the sale of the real property. Under that part of the contract disposing of the household furniture, the sellers' real estate agent was to receive the furniture in full payment of his commission for making the sale and as consideration for executing the contract. In the contract he promised to pay the first $1,000 of the principal of the purchase price of the real estate. The contract provided that the agent would cure any default of the buyers in the payment of the first $1,000 of the purchase price and that if he did so, he would have the right to declare the agreement terminated as to the buyers and would succeed the rights of the buyers. The contract provided as well for the sellers' termination of the contract for the buyers' failure to make any of the payments and for the sellers' retention of all payments as liquidated damages. In such an event, the sellers had the right to possession of the premises. A further provision of the contract was as follows:

> "'The right of the vendors to terminate this agreement for default of the purchasers shall not be affected by the right of the said [agent] to so terminate this agreement, *and if the vendors shall so terminate this agreement they shall still have the right to receive, and the said [agent] shall still be bound to pay,* any balance remaining unpaid of the first One Thousand Dollars ($1,000.00) of said price with interest on the whole unpaid balance up to the time when the said One Thousand Dollars ($1,000.00) shall have been paid. * * *' " (Emphasis added.) (163 Wash. 290, 294-95, 1 P.2d 215, 216-17.)

When the buyers defaulted after having paid less than the first $1,000 of the purchase price, the sellers terminated the contract with the buyers and then sought the remainder of the $1,000 from the agent on his guaranty.

The court rejected the contention that the sellers' retaking of the property barred any action on the agent's promise to pay. The court found the agreement "an original undertaking for a consideration furnished by those for whose benefit it was made, and in which the purchasers of the real estate were in no way interested." (163 Wash. 290, 299, 1 P.2d 215, 218.) Having set forth the agreement and having

emphasized that part of the agreement which we have emphasized, the court reasoned,

"This language, and especially the portion we italicize, cannot be ignored or overlooked. If the vendors terminate their contract with the purchasers of the real estate, as they did by the notice given, [the agent] was still bound to pay a certain amount to the vendors. It is this provision in the contract that marks the distinction between this case and the cases of Jordan v. Peek, 103 Wash. 94, 173 P. 726, and Duke v. Benson, 134 Wash. 495, 236 P. 77, of which cases this court, in Sterling v. Loudenback, 155 Wash. 36, 283 P. 476, 479, said: 'in each case the guaranty sued upon was a part of the contract which had been terminated, there being no other contract between the parties.' In each of those cases the party sued had agreed only that he would guarantee payments to be made by the purchaser; when, therefore, the contract was canceled by the vendor, who retook the property, nothing was left to be paid by either the purchaser or the guarantor—the whole contract was canceled. And in this case, if [the agent] had simply guaranteed certain payments to be made by the [buyers], then, upon the termination by the vendors of the real estate contract, so far as the rights of the vendees were concerned, and possession of the property taken by the vendors, [the agent] would have been free; but such was not the case. There was another and further contract between him and the vendors by which he agreed that, even if the vendors did terminate the contract with the purchasers of the real estate, he would, nevertheless, make certain payments mentioned that are involved in the present controversy." 163 Wash. 290, 299-300, 1 P.2d 215, 218.

Relying upon *Coughlin*, the Supreme Court of Washington held similarly in *Fruehauf Trailer Co. of Canada, Ltd. v. Chandler* (1966), 67 Wash. 2d 704, 409 P.2d 651. There the cause arose out of an installment contract for the sale not of real estate but of 12 trailer units. The court found guarantors obligated despite the seller's repossession of the trailer units because of the terms of the guaranty agreement which provided that the guaranty " 'shall not be affected by any * * * *compromise, settlement,* * * * *or by the discharge or release of any obligation of [the buyer]*.' " (67 Wash. 2d 704, 707, 409 P.2d 651, 653.) Of *Coughlin* the court said,

"The Coughlin case announces the rule that repossession and discharge of the original obligation is not a defense available to a third person who has expressly guaranteed to pay the creditor a fixed or determinable amount in the event of loss." 67 Wash. 2d 704, 709, 409 P.2d 651, 654.

■■ While the more recent Illinois case of *Jacobson v. Devon Bank* (1976), 39 Ill. App. 3d 1053, 351 N.E.2d 254, does not consider the continuing liability of a guarantor after forfeiture, it reiterates basic principles of suretyship pertinent here and, more importantly, isolates as its central problem the language of the guaranty, which is our principal concern here. In *Jacobson* the plaintiff had sought a declaration from the trial court that his written guaranty given to a bank was void by virtue of his having been discharged by acts of the holder and of the debtor that impaired his rights. The bank contended that the guarantor had waived any of the defenses he had raised by the agreement that he had made. In concluding that the guarantor had not been discharged from liability, the court stated,

" 'It is a rule that guaranty agreements are to be strictly construed in favor of the guarantor * * *' and 'the liability of a guarantor cannot be extended by construction.' [Citations.] However, '[w]here a contract of guaranty is unequivocal in its terms it must be interpreted according to the language used, for it is presumed that the parties meant what their language clearly imports.' [Citation.] In addition, 'it is elementary that a guarantor is not liable for any thing which he did not agree to * *. *.' [Citations.]

The case before us hinges on the language of the guaranty. We are required to note and to consider the broad liability expressly assumed in the instrument of guaranty * * *.

In the case before us, we are not dealing with an ambiguous document which requires construction by the court. We are dealing with a legal document executed by these parties presumably in an effort to implement their intention as 'their language clearly imports.' [Citation.] In this type of situation we are obliged to give effect to the clear and unambiguous language which the parties ratified and adopted. The importance of the language in a contract of guaranty may be illustrated and accentuated by comparing *First Bank & Trust Co. v. Post* (1973), 10 Ill. App. 3d 127, 293 N.E.2d 907, to *In re Application of Bickel* (1973), 14 Ill. App. 3d 813, 303 N.E.2d 541. In both cases the creditor failed to take proper action to realize the benefit from collateral given by the debtor. In the first of these cases, this court held that the guarantor was discharged since the language of his guaranty did not waive impairment of collateral by the creditor. In the latter case, this court refused to discharge a guarantor where the creditor had failed to take proper steps concerning the collateral because the guaranty expressly provided that delay or omission by the creditor in exercising any right or power under the note should not affect the liability of the guarantor. This court

applied the clear and unambiguous language of the guaranty, precisely as we are obliged to do in the case before us." 39 Ill. App. 3d 1053, 1055-56, 351 N.E.2d 254, 255-56.

■■ Although neither the trial court in its order nor the appellees in their brief allude to the contractual provision stating that the guarantors' liability "shall remain notwithstanding any forfeiture," we, like the court in *Jacobson*, are obliged to apply the clear and unambiguous language of the guaranty. Defendants make no claim of ambiguity, and we find none. The waiver of the effect of forfeiture in the guarantee, as the court said of the provision in *Sterling*, provided directly for the possibility that "[the buyer] might not make his payments, and that [the seller] might declare the contract between himself and [the buyer] forfeited." (155 Wash. 36, 44, 283 P. 476, 479.) The very contingency provided for in the contract has, in fact, occurred. While the resale of the property makes the result seem the more harsh, the fact is that the guarantors did limit the amount of their liability in certain respects. Had they wished and had Illini agreed, they could have provided a further limitation upon their liability by specifying termination of it in the event of a resale upon forfeiture.

■■ In their brief defendants contend that since the measure of damages for the breach of a contract for the sale of land is the difference between the contract price and the market price of the property on the date of the breach, Illini, by selling the property for $600,000—$50,000 more than Landcare paid for it—has suffered no damages and they are therefore relieved of any liability. However, this is not an action for damages. Illini has already been paid damages in the amount fixed in the contract by the provision for liquidated damages. This is an action on the contract of guaranty. These guarantors, like those in *Glassell*, did not guarantee the liability of the buyer in the event of a breach of the contract; they guaranteed to pay up to $50,000 of the purchase price of the real property provided that the purchase price had not dipped at any time below $450,000 and subject to the further provision that the guarantors in *Glassell* did not labor under, that which said, "notwithstanding any forfeiture."

■■ We consider defendants' alternative contention that the contract of guaranty was void as surplusage to be without merit. Defendants maintain this because, they say, under the language of the guaranty Illini could have treated them as principal obligors. That proposition they urge because of that part of the agreement which states that defendants "guarantee the covenants * * * as described in the sales contract in the same manner as if their names were read into this document in place of Landcare, Incorporated subject however to the limits of liability expressly provided." To find that defendants are in essence principal obligors would be inconsistent with the intent of the parties as it is

manifested in the pertinent provisions of the contract and nowhere more plainly than in that provision expressly preserving their limited liability "notwithstanding any forfeiture."

We have determined that the defendants are liable upon their guaranty. We have not determined the amount of their individual liability or the amount of the arrearage upon the principal obligation. These issues were not litigated in the trial court and the parties have not addressed them in their briefs. These matters we leave to the determination of the trial court upon remand.

For the foregoing reasons the judgment of the circuit court of St. Clair County is reversed and the cause is remanded for proceedings consistent with the views expressed herein.

Reversed and remanded.

KARNS and SPOMER, JJ., concur.